**CROSSMARK, INC., Appellant**

v.

**John HAZAR and Jim Hazar, Appellees.**

**No. 05–02–01169–CV.**

Court of Appeals of Texas, Dallas.

Jan. 15, 2004.

David M. Pruessner, Law Office of David M. Pruessner, Dallas, for appellant.

Stewart H. Thomas, Jose M. Portela, Beckham & Thomas, LLP, Dallas, for appellees.

Before Justices MOSELEY, O'NEILL, and LAGARDE.[1]

## OPINION

Opinion by Justice MOSELEY.

The issues in this appeal center on the judicial confirmation of an arbitration

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

award, and conversely, the grounds for vacating or modifying such an award. Appellant Crossmark, Inc. ("Crossmark") appeals the trial court's final judgment, based in part on a prior interlocutory summary judgment, that confirms an arbitration award in favor of appellees John and Jim Hazar (the "Hazars"). In six issues, Crossmark asserts the trial court: (1) erred by confirming a piecemeal arbitration award; (2) erred by refusing to join an indispensable party; (3) erred by confirming an arbitration award that violated public policy;[2] (4) erred by refusing to modify the arbitration award based on an "evident miscalculation of numbers;" and (5) erred by increasing the arbitration award to include additional attorneys' fees for enforcing and appealing the confirmation of an arbitration award. For reasons stated below, we modify the judgment to delete the award of attorneys' fees for confirming the award, for appealing to this Court, and for potentially appealing to the supreme court. As modified, we affirm the trial court's judgment.

## BACKGROUND

Through a Bill of Sale and Assignment Agreement ("sales agreement"), Crossmark purchased the assets of Action Brokerage, Inc. ("Action"), a consumer products brokerage company owned and operated by the Hazars. In addition to the sales agreement with Action, Crossmark entered into separate confidentiality and non-competition agreements ("non-competition agreements") with each of the Hazars. All three agreements contained arbitration clauses.

Under the non-competition agreements, in return for the Hazars' agreements not to compete for a period of ten years, Crossmark agreed to pay each of the Hazars $600,000, payable in equal monthly payments over the ten-year period. The agreements also provided that if Crossmark breached its obligations under the non-competition agreements, the Hazars had the right to "accelerate the balance of any amounts owed" to them.

The sales agreement defined the term "assets," but a dispute arose over whether this definition included Action's accounts receivable (representing contractual rights to earned but unpaid commissions). Six months after the purchase, Crossmark reduced its payments to the Hazars under the non-competition agreements. (In their brief, the Hazars state Crossmark stopped making payments altogether.)[3]

Pursuant to the arbitration clauses in the non-competition agreements, the Hazars instituted an arbitration proceeding before a panel of three arbitrators. In that proceeding, Crossmark filed: a response raising defenses, including prior breach of agreements by the Hazars and failure of consideration; a counterclaim against the Hazars; and a third-party claim against Action seeking to join it in the arbitration proceeding. Crossmark argued that Action had breached the sales agreement, justifying Crossmark's reduction in payments to the Hazars under the non-competition agreements.

The parties' briefs indicate that the arbitration panel held a preliminary hearing and stated it would not join Crossmark's claims against Action into the pending arbitration; according to the Hazars' brief,

**2.** Crossmark's issues actually question whether the trial court violated public policy by confirming the award. As discussed below, the appropriate standard is whether the arbitration award violated public policy.

**3.** We may, but are not required to, accept as true facts stated in the briefs that are not contradicted by another party. *See* Tex.R.App. P. 38.1(f).

this took place on July 7, 2000, some months before the arbitration hearing began on October 31, 2000. The Hazars' brief also indicates the panel advised Crossmark that if it filed a separate arbitration proceeding against Action based on the sales agreement, the arbitration panel would consider a motion to consolidate the two proceedings.

According to Crossmark's brief, shortly before the arbitration hearing it again sought to assert its claims against Action in the pending arbitration proceeding, and moved to postpone the arbitration hearing. According to the Hazars' brief, this occurred four business days before the scheduled hearing; the arbitrators heard these motions, denied them, and proceeded with the hearing.

After hearing witnesses and reviewing documentary evidence, the arbitrators awarded the Hazars: (1) $570,000 each, which equaled the unpaid portion of the $600,000 consideration payable to each of the Hazars under the non-competition agreements; (2) attorneys fees; and (3) "post-Award" interest. The award also denied Crossmark's counterclaim against the Hazars and dismissed Crossmark's third-party claim against Action stating:

> The Arbitrators decline to entertain either the third party claim filed by Crossmark against Action ... or the arbitration proceeding initiated by Crossmark against Action for want of jurisdiction and without prejudice to the rights of any party.

The Hazars filed an application in the trial court to confirm the arbitration award. Crossmark answered and counterclaimed seeking to have the award vacated, or at least modified. The Hazars then filed a motion to confirm the arbitration award, but Crossmark filed an objection arguing that the motion could only be made as a motion for summary judgment under rule 166a because it relied on evidence beyond the pleadings. In response the Hazars moved for summary judgment confirming the award.

Crossmark filed a response to the Hazars' motion and a cross-motion for partial summary judgment. Crossmark also filed a third-party claim naming Action as a party, asserting its claims for breach of the sales agreement. Action answered and filed a motion to compel arbitration of Crossmark's claims against it under the sales agreement.

The summary judgment record includes affidavits from lawyers involved in the arbitration testifying as to what occurred during the arbitration process, and attaching some of the documents filed in the arbitration proceeding. Both parties objected to these affidavits in whole or in part below, but the trial court did not rule on any of those objections. We note the summary judgment record does not include a transcription of the arbitration proceedings or a complete record of the documents that were filed in the arbitration.

The trial court granted the Hazars' motion for summary judgment confirming the award. The trial court also severed Crossmark's claims against Action into a separate suit, compelled arbitration of those claims, and abated that suit pending the arbitration. The Hazars then moved for summary judgment on Crossmark's counterclaims and defenses (which claims and defenses sought to vacate or modify the award). Crossmark filed a response and a cross-motion for summary judgment. The trial court subsequently granted the Hazars' motion for summary judgment as to Crossmark's counterclaims, denied Crossmark's cross-motion for summary judgment as moot, denied Crossmark's other motions, and entered a final judgment in favor of the Hazars. The final judgment incorporated the prior summary judgment

confirming the arbitration award, and awarded the Hazars additional attorneys' fees for confirming the arbitration award and conditional attorneys' fees for appeals of the judgment confirming the award. Crossmark perfected its appeal to this court.

## LAW APPLICABLE TO ARBITRATION PROCEEDINGS

■■■ Texas substantive law favors arbitration. *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). An arbitration award has the same effect as the judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for that of the arbitrators merely because the court would have reached a different decision. *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Arbitration awards are entitled to great deference by the courts "lest disappointed litigants seek to overturn every unfavorable arbitration award in court." *Daniewicz v. Thermo Instrument Sys., Inc.*, 992 S.W.2d 713, 716 (Tex.App.-Austin 1999, pet. denied).

■■■ Under the Texas General Arbitration Act, TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–171.098 (Vernon Supp. 2004) (the "Act"),[4] courts may enter several types of orders in connection with an arbitration proceeding, including orders to confirm, vacate, or modify an arbitration award. *Id.* §§ 171.082, 171.086(b)(6).[5]

However, judicial review of arbitration awards "adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes." *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex.2002). Therefore, such review should be limited and expeditious. In most cases, an application under the Act to vacate or modify an arbitration award must be made within 90 days after delivery of the award. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.088(b), 171.091(b). Upon application by a party, the trial court shall confirm an arbitration award unless the other party offers grounds for vacating, modifying, or correcting the award. *Id.* § 171.087. Once the court enters an order confirming, modifying, or correcting an arbitration award, the court shall enter a judgment conforming to the order. *Id.* § 171.092.

■■ A reviewing court (i.e. the trial court) will not set aside an arbitration award for a mere mistake of fact or law. *See Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.-Houston [14th Dist.] 1995, no writ). Indeed, the Texas Supreme Court has ruled that a court reviewing an arbitration award lacks jurisdiction to review complaints that do not assert statutory, common law, or public policy grounds to vacate or modify the award. *See CVN Group, Inc.*, 95 S.W.3d at 239; *J.J. Gregory Gourmet Servs. v. Antone's Import Co.*, 927 S.W.2d 31, 35 (Tex.App.-Houston [1st Dist.] 1995, no writ).

---

**4.** Some of the briefs filed in the trial court argued that the Federal Arbitration Act applied to this case. 9 U.S.C. §§ 1–16. On appeal, the parties have only argued the Texas General Arbitration Act; thus, we only address the Texas act.

**5.** Under the common law, a party seeking to confirm an award must file suit and show: (1) that the parties agreed to submit a dispute to arbitration; (2) that the dispute was arbitrat-

ed; (3) that the arbitration resulted in an award; and (4) that there was a breach or failure to comply with the award. *See Commercial Standard Ins. Co. v. Nunn*, 445 S.W.2d 586, 587 (Tex.Civ.App.-Texarkana 1969, writ ref'd n.r.e.). The Hazars filed an application to confirm the award under the Act and we do not discuss the common law procedures for confirming or vacating an award.

Crossmark asserts no common law grounds for vacating the award.[6] The statutory grounds for vacating an arbitrators' award are limited to situations where: (1) the award was the product of corruption, fraud, or undue influence; (2) a party was prejudiced by the evident partiality, or by the corruption, misconduct, or willful behavior of the arbitrator; (3) the arbitrator exceeded his powers; (4) the arbitrator refused to postpone the hearing, refused to hear evidence material to the controversy, or otherwise conducted the hearing so as to substantially prejudice the rights of a party; or (5) if there was no arbitration agreement, the issue was not adversely determined in a proceeding to compel or stay arbitration, and the complaining party participated over objection. TEX. CIV. PRAC. & REM.CODE ANN. § 171.088; *J.J. Gregory*, 927 S.W.2d at 33. In addition to these statutory grounds, an arbitration award can be set aside on public policy grounds "in an *extraordinary* case in which the award clearly violates carefully articulated, fundamental [public] policy." *CVN Group, Inc.*, 95 S.W.3d at 239 (emphasis added).

The Act specifically provides that an application under the Act is heard in the same manner and on the same notice as a motion in a civil case. TEX. CIV. PRAC. & REM.CODE ANN. § 171.093.[7] This section is similar to section 6 of the Federal Arbitration Act[8] and has the same policy—to expedite judicial treatment of matters pertaining to arbitration. *See World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365–66 (2nd Cir.1965). Thus, applications to confirm or vacate an arbitration award should be decided as other motions in civil cases; on notice and an evidentiary hearing if necessary. Summary judgment motions are not required for the trial court to confirm, modify, or vacate an arbitration award. However, if a party chooses to follow summary judgment procedure rather than the simple motion procedure authorized by the Act, it assumes the traditional burdens and requirements of summary judgment practice. *See* TEX.R. CIV. P. 166a; *Mariner Fin. Group, Inc. v. Bossley*, 79 S.W.3d 30, 32, 35 (Tex.2002) (although party opposing arbitration award on grounds of evident partiality had ultimate burden of proof, proponent of award asserting traditional motion for summary judgment had burden to negate evident partiality defense as a matter of law).

The standard of review applicable to a judgment confirming an award under the Act is affected by the nature of the proceedings utilized by the trial court. *See Mariner Fin. Group, Inc.*, 79 S.W.3d at 35 (affirming court of appeals judgment applying summary judgment standard of review to judgment obtained via summary judgment). Thus, we review a traditional summary judgment confirming an award using the standards of review applicable to traditional summary judgments generally. *See id.; Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 429–30 (Tex.App.-Houston [1st Dist.] 2000, no

---

6. The common law grounds to set aside an arbitration award include fraud, misconduct, or gross mistake that implies bad faith and failure to exercise honest judgment. *See J.J. Gregory*, 927 S.W.2d at 33.

7. "The court shall hear each initial and subsequent application under this subchapter in the manner and with the notice required by law or court rule for making and hearing a motion filed in a pending civil action in a district court." TEX. CIV. PRAC. & REM.CODE ANN. § 171.093.

8. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.").

pet.) (applying summary judgment standards in appeal of summary judgment confirming an arbitration award). *See also Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (summary judgment standard of review inapplicable to judgment based on motion to confirm arbitration award).

Here, the Hazars filed a simple motion to confirm the award, but Crossmark objected on the ground that such a request had to be by motion for summary judgment supported by affidavits. The Hazars then abandoned this motion and moved for summary judgment confirming the arbitration award, which the trial court granted. The Hazars then filed a second motion for summary judgment against Crossmark's defenses and counterclaims to vacate or modify the award, which the trial court granted at the same time it denied Crossmark's cross-motion for summary judgment seeking to vacate or modify the award.[9]

Like the proponent of the arbitration award in *Mariner Financial Group, Inc.*, the Hazars assumed the summary judgment burden of negating the grounds alleged by Crossmark for vacating or modifying the award, even though Crossmark would have the ultimate burden at trial of proving those grounds in order to prevail. The trial court's judgment is based on the Hazar's traditional motions for summary judgment. Therefore, we apply the traditional summary judgment standard of review. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (summary judgment standards of review). Further, when both sides move for summary judgment and the trial court grants one motion and denies the other,

we review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). Where the only question presented to the trial court was a question of law and both sides moved for summary judgment, the appellate court should render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 883 (Tex.2001); *Jones*, 745 S.W.2d at 900. Summary judgment is particularly appropriate where the parties do not dispute the facts and present only questions of law. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356–57 (Tex.2000); *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). Where the parties do not dispute the facts, review of the summary judgment properly focuses on whether the trial court correctly applied the law to the facts. *See Black v. Dallas County Bail Bond Bd.*, 882 S.W.2d 434, 436 (Tex.App.-Dallas 1994, no writ).

## ANALYSIS

Crossmark raises five issues on appeal asserting the trial court erred by not vacating or modifying the arbitration award, and a sixth issue regarding the award of additional attorneys' fees. Crossmark broadly groups its arguments under three topics: (1) the arbitrators' refusal to address Crossmark's claims against Action under the sales agreement (issues one through three); (2) the arbitrators' award of the balance of the payments to be paid to the Hazars under the non-competition agreements without discounting the amount of those future payments for pres-

---

9. The Hazars did not file a no-evidence motion for summary judgment on Crossmark's claims. *See* TEX.R. CIV. P. 166a(i).

ent value (issues four and five); and (3) the trial court's award of additional attorneys' fees to the Hazars for confirming the arbitration award (issue six).

### A. Crossmark's Claims against Action

Crossmark asserts five arguments under its first three issues dealing with the arbitrators' and the trial court's failure to address Crossmark's claims against Action: (1) the arbitrators' failure to postpone the arbitration hearing to allow Crossmark to rejoin Action or consolidate an arbitration against Action with the Hazar arbitration; (2) trial court error in "refusing" to join Action in the confirmation suit and in severing Crossmark's claims against Action; (3) the award violates public policy against piecemeal litigation or arbitration; (4) the sales agreement and non-competition agreements were a single instrument; and (5) the award violates public policy against enforcing covenants-not-to-compete without an otherwise enforceable agreement.

#### 1. Failure to Postpone the Arbitration Hearing on Sufficient Cause

■ Crossmark's first argument is the only argument asserting a statutory ground for vacating an arbitration award— that the arbitrators failed to postpone the arbitration hearing upon a showing of sufficient cause for a postponement. Tex. Civ. Prac. & Rem.Code Ann. § 171.088(a)(3)(B). The limited record before us and the trial court shows that Crossmark failed to show sufficient cause for a postponement. The

record reflects that in its response to the arbitration claim, Crossmark sought to join Action as a third party to the arbitration. At a preliminary hearing held some months before the arbitration hearing, the arbitrators refused to join Action as a party, but indicated they would consider a motion to consolidate the arbitration proceedings if Crossmark properly initiated a separate proceeding against Action. According to the briefs of the parties, it was not until six days before the hearing was to begin that Crossmark filed a separate arbitration proceeding against Action and again moved to join Action in the Hazar arbitration, to consolidate the arbitration proceedings, and to postpone the Hazar hearing to allow for mediation required under the sales agreement between Crossmark and Action. The arbitrators heard this motion on the first day of the scheduled arbitration hearing and denied the motion.

Accordingly, we conclude the trial court did not err in granting summary judgment against Crossmark's statutory ground for vacating the award based on the arbitrators' failure to postpone the arbitration hearing upon a showing of sufficient cause.

#### 2. Refusal to Join (and Severance of) Action as a Party

■ Crossmark argues Action was an indispensable party to the suit to confirm the arbitration award under rule 39. Tex.R. Civ. P. 39.[10] Although the trial court

---

10. Thus this argument appears to be directed solely to the trial court's action in the confirmation suit. To the extent Crossmark argues the arbitration panel violated rule 39 by not allowing Action to be joined as a party, we reject this argument because rules of civil procedure and evidence, absent a provision in the arbitration agreement, do not apply in arbitration proceedings. *See generally* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.043–.047 (procedures for conduct of arbitration hear-

ing); *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex.1995) (orig. proceeding) (per curiam) (arbitration is inexpensive, rapid alternative to traditional litigation procedures). In addition, the arbitrators' alleged violation of the procedural rules of a particular arbitration association would not be reviewable in court. *See J.J. Gregory*, 927 S.W.2d at 33 (absent statutory or common law grounds to vacate or modify award, re-

denied Crossmark's motion to join Action as an indispensable party, Crossmark joined Action as a third-party defendant in the suit to confirm the award. Action thus appeared and answered, and assuming Action was a party to be joined under rule 39, any error in denying Crossmark's motion was harmless. *See* Tex.R. Civ. P. 39, Tex. R.App. P. 44.1.

■ Although Action was joined as a third-party defendant to the Hazars' suit to confirm the award, the trial court later severed out Crossmark's third-party claims against Action. The trial court did not abuse its discretion in doing so because the purpose of the Hazars' suit was to confirm the arbitration award between the Hazars and Crossmark, an award to which Action was not a party. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). Crossmark's arguments that Action should have been a party to the arbitration are of no avail; the fact remains that, in the posture of the case before the trial court, Action was not an "indispensable" party to the suit to confirm the award. *See* Tex.R. Civ. P. 39(a).

Further, even though the "facts and issues" involved in Crossmark's dispute with Action were related, similar, or even identical to those involved in Crossmark's dispute with the Hazars, those issues in the Hazars–Crossmark dispute were resolved before the *arbitrators;* they are not the same issues as those before the trial court in the confirmation proceeding. Again, the only issues involved in a proceeding to

confirm an arbitration award are whether statutory, common law, or public policy grounds exist to vacate or modify the award. *See CVN Group, Inc.*, 95 S.W.3d at 239; *J.J. Gregory*, 927 S.W.2d at 35. These are not the same issues as the issues on the merits involved in the underlying arbitration proceeding.

Moreover, Crossmark's claims against Action were not based on the same contract as that involved in arbitration, but on a separate, albeit related, contract. Those claims could be asserted independently in a separate proceeding, and were not so interwoven with the confirmation suit that they involved the same facts and issues.[11] *See Horseshoe Operating*, 793 S.W.2d at 658. Thus, Crossmark's claims against Action under the sales agreement are severable from the Hazars' claims based on the arbitration award, and the trial court did not err in severing Crossmark's claims against Action from the Hazars' suit to confirm the award against Crossmark.

### 3. Public Policy Arguments

Crossmark's public policy arguments are all essentially the same; by not joining and hearing Crossmark's claims against Action, the arbitrators: (1) violated public policy against "piecemeal litigation;" (2) did not consider the sales agreement and the non-competition agreements as a single instrument; and (3) violated public policy by enforcing a naked covenant-not-to-compete, separate and apart from the main contract. These contentions all hinge on the same essential assertion: it was a violation of public policy for the arbitrators to

---

viewing court lacks jurisdiction to review other complaints about award).

11. For example, under the terms of the non-competition agreements, the stated condition on Crossmark's obligation to pay the $600,000 to each of the Hazars is that the Hazars "will not violate the restrictive covenants set forth herein." Action's perform-

ance under the sales agreement was not a condition to the payments under the non-competition agreements. Further, the non-competition agreements contained a merger clause stating "this Agreement constitutes the entire agreement between [Crossmark] and [the Hazars] concerning the subject matter hereof."

award the Hazars damages against Crossmark for breach of the non-competition agreements without considering Crossmark's claims against Action under the sales agreement.

 While there is a general policy against a multiplicity of lawsuits and in favor of resolution of claims arising out of the same transaction or occurrence, the summary judgment record shows that this policy has not been violated and that this arbitration could fall within one of many exceptions to the policy. As we have already noted, absent a specific agreement the rules of civil procedure and joinder of claims and parties do not apply in arbitration. Here, the arbitrators were presented with separate agreements with separate arbitration provisions and different parties. The terms of the non-competition agreements were not conditioned on performance of the sales agreement, and the non-competition agreements were the "entire agreement between [Crossmark] and [the Hazars] concerning the subject matter hereof." Further, Crossmark knew some months before the arbitration hearing that the arbitrators would not allow joinder of the third-party claim against Action, but might consider joining any separately-pending arbitration proceeding between Crossmark and Action. Nevertheless, Crossmark waited until days before the arbitration hearing before it filed a separate arbitration proceeding against Action and sought to consolidate the two proceedings and postpone the hearing.

 Crossmark's argument that the agreements had to be considered a single instrument is based on the simple rule of contract construction that related documents can be considered together in determining the intent of the parties. Any error by the arbitrators in applying or failing to apply this rule would be merely an error of law that is not reviewable by a court

confirming the award. *See J.J. Gregory,* 927 S.W.2d at 33.

Crossmark argues that an arbitrator cannot interpret and enforce provisions of an agreement containing a covenant-not-to-compete clause without considering other related agreements. In support of its argument, Crossmark cites the principle that covenants-not-to-compete cannot be enforced if they are a "naked restraint of trade." *See Light v. Centel Cellular Co.,* 883 S.W.2d 642, 647 (Tex.1994). On that basis, it asserts that deciding the Hazars' claims based on the non-competition agreements without also deciding Crossmark's claims based on the sales agreement amounts to the enforcement of a naked restraint of trade.

 Crossmark's argument fails in at least two ways. First, in the arbitration the Hazars sought to enforce the payment of the *consideration* for their covenants-not-to-compete. The arbitration involved neither an effort by the Hazars to avoid the obligations of their non-competition agreements, nor an action by Crossmark to enforce the agreement and prevent the Hazars from competing. Thus, the arbitration proceeding did not involve the enforcement of a restraint of trade. Second, the public policy embodied in the statutes and in *Light*—an opposition to naked restraints of trade—is satisfied by requiring a non-competition agreement to be ancillary to or a part of an otherwise enforceable agreement at the time the agreement is made. *See* TEX. BUS. & COM.CODE ANN. § 15.50(a); *Light,* 883 S.W.2d at 644–45. *See Tom James of Dallas, Inc. v. Cobb,* 109 S.W.3d 877, 886 (Tex.App.-Dallas 2003, no pet.). Neither the Hazars nor Crossmark claims that, at the time the non-competition agreements were made, they were not ancillary to or a part of an otherwise enforceable agreement. Thus, the public policy of the statute is satisfied. To use

the phrase from *CVN Group, Inc.,* there is no "carefully articulated, fundamental [public] policy" against asserting a claim for the consideration given for a promise not to compete separate from any claims or counterclaims based on the separate agreement to which the non-competition agreement was ancillary.

■ Rather than raising public policy arguments, Crossmark's contentions raise only the legal argument of whether the arbitrators should have considered all the agreements together as one instrument. *See Courage Co. v. Chemshare Corp.,* 93 S.W.3d 323, 333 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Crossmark's real contention is that the arbitrators erred by refusing to accept its failure of consideration defense. The trial court could not review these non-statutory and non-public policy grounds for challenging the award. *See CVN Group, Inc.,* 95 S.W.3d at 239. Crossmark presented the same fundamental argument to the arbitrators who, as noted above, found in favor of the Hazars and declined to join Action as a third-party defendant. Any alleged errors by the arbitrators in applying the substantive law are not subject to review in the courts. *See J.J. Gregory,* 927 S.W.2d at 35; *Anzilotti,* 899 S.W.2d at 266; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.087. Because Crossmark's arguments at most raise issues as to the application of law, as opposed to presenting fundamental public policy arguments, the trial court could not have set aside the arbitrators' award on the basis of Crossmark's first three issues. *See Anzilotti,* 899 S.W.2d at 266. Consequently, the trial court properly confirmed and refused to vacate the award on public policy grounds. *Cf. CVN Group, Inc.,* 95 S.W.3d at 243 (no error by trial court confirming an award when there is no public policy in Texas that prevents arbitrators determining validity of a mechan-

ic's lien on a homestead). Accordingly, we resolve Crossmark's first three issues against it.

**B. Failure to Discount Award**

Crossmark argues that by failing to discount the amounts awarded to the Hazars, the arbitration award is an unlawful penalty and can be vacated on public policy grounds. In the alternative, Crossmark argues the award contains an evident miscalculation of numbers and should be modified to discount the amounts awarded to present value. We find Crossmark's contention to be without merit.

■ Crossmark equates the acceleration clauses to liquidated damages clauses. The general rule in Texas is that parties are bound by their agreed-to measure of damages for a breach of contract. *See Buhler v. McIntire,* 365 S.W.2d 237, 239–40 (Tex.Civ.App.-Austin 1963, writ ref'd n.r.e.). Nonetheless, if the liquidated damages provision contains an unlawful penalty, public policy may forbid enforcement of the agreed-to measure of damages. *Id.* at 240; *cf. Phillips v. Phillips,* 820 S.W.2d 785, 788 (Tex.1991) (considering difference between enforceable liquidated damages provision and unenforceable penalty). An acceleration clause, as the agreed-to measure of damages, does not contain an unlawful penalty unless it requires unearned interest to be collected. *See Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513, 518 (Tex.Civ.App.-Corpus Christi 1981, writ ref'd n.r.e.) (acceleration clause allowing collection of unearned interest violates consumer credit statutes).

■ The non-competition agreements specified that the consideration for each covenant was $600,000; the agreement allowed Crossmark to pay that amount over time. The non-competition agreements do not provide for interest on the payments of the consideration over time. Thus, the

acceleration clauses in question do not require unearned interest to be collected; they merely accelerate the payments due to the Hazars for the non-competition agreements. Accordingly, the acceleration clauses do not contain unlawful penalties and do not violate public policy. *See McDaniel,* 613 S.W.2d at 518–19. Therefore Crossmark's fourth contention also fails to present a fundamental public policy ground for setting aside the arbitrators' award.

Crossmark argues, in the alternative, that the trial court erred by not modifying the arbitration award because there was an "evident miscalculation of numbers." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.091. Specifically, Crossmark asserts that the arbitrators' failure to discount the lump sum award to present value was an "evident miscalculation of numbers."

■ A court may not overturn an award based upon "evident miscalculation of numbers" unless the mistake is clear, concise, and conclusive from the record. *See City of Baytown v. C.L. Winter, Inc.,* 886 S.W.2d 515, 519 (Tex.App.-Houston [1st Dist.] 1994, writ denied). "Miscalculation" implies inadvertence or an error caused by oversight. *Riha v. Smulcer,* 843 S.W.2d 289, 293 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Crossmark failed to show the arbitrators made any miscalculation or mistake in calculating the award. Rather, the record indicates the arbitrators rejected Crossmark's arguments for a discount based on the language of the non-competition agreements. The arbitrators' rejection of Crossmark's argument for a discount to present value was not inadvertence or an error caused by oversight; thus it was not an "evident miscalculation of numbers." *Cf. id.* (arbitrator's failure to address impact of credits in determining award not evident miscalculation of figures). We conclude the trial court did not err in granting summary judgment against Crossmark's evident miscalculation of numbers argument. As such, we resolve Crossmark's fourth issue against it.

## C. Additional Attorney Fees for Enforcing/Appealing Confirmation

The arbitrators awarded the Hazars $55,000 in attorneys fees. However, the trial court awarded the Hazars additional attorneys' fees for enforcing the award, for an appeal to this Court, and for a potential appeal to the supreme court. In its sixth issue, Crossmark asserts the trial court erred by increasing the arbitration award for these additional attorneys' fees.

■ If an arbitration award includes an award of attorneys' fees, a trial court may not award additional attorney fees for enforcing or appealing the confirmation of the award, unless the arbitration agreement provides otherwise. *See Cooper v. Bushong,* 10 S.W.3d 20, 26 (Tex.App.-Austin 1999, pet. denied); *Int'l Bank of Commerce–Brownsville v. Int'l Energy Dev. Corp.,* 981 S.W.2d 38, 54–55 (Tex.App.-Corpus Christi 1998, pet denied). Thus, there is no legal basis for awarding additional attorneys' fees for enforcing or appealing the confirmation of the award. *See Cooper,* 10 S.W.3d at 26; *Int'l Bank of Commerce,* 981 S.W.2d at 54–55. The Hazars could not show they were entitled to an award of additional attorneys' fees as a matter of law; therefore, the trial court erred by including such fees in the judgment. We resolve Crossmark's sixth issue in its favor.

### CONCLUSION

We conclude the Hazars established as a matter of law that the arbitration award should be confirmed and that Crossmark's statutory and public policy grounds for vacating or modifying the award should be

denied. *See CVN Group, Inc.*, 95 S.W.3d at 239; *J.J. Gregory*, 927 S.W.2d at 35; *see also* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.087, 171.091. However, we modify the trial court's judgment to delete the award of the additional attorneys' fees for enforcing the award, for appealing to this Court, and for potentially appealing to the supreme court. *See Cooper*, 10 S.W.3d at 26. As modified, we affirm the trial court's judgment.