MARY'S OPINION HEADING 









                                                NO.
12-06-00075-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER,
TEXAS

IN THE ESTATE OF           §                      APPEAL
FROM THE 

 

ROY L. WILSON,      §                      COUNTY
COURT AT LAW

 

DECEASED  §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                 
                          

OPINION








            The trial court granted summary judgment that three joint
accounts held by the deceased, Roy L. Wilson, and his surviving wife, Sharon V.
Wilson, passed outside of Roy’s probate estate to Sharon.  The independent executrix of Roy’s estate
appeals, asserting in five issues that no right of survivorship was created by
the documents establishing the joint accounts and that the accounts were part
of Roy’s probate estate because of a court order approving her inventory and
appraisement.  We affirm.

 

Background








            Roy and Sharon established two joint money market savings
accounts and a joint checking account with Bank of America on August 18, 2003.           In establishing these three
accounts, Roy and Sharon signed a separate personal signature card for each of
the three accounts.  On each of the three
cards, they marked an “X” next to the box that said “Joint with Right of
Survivorship.”  On the signature cards
establishing two of the accounts, the boxes showing “Individual,” “Payable on
Death,” and “Totten Trust account” were specifically marked through.  Each of the three signature cards stated that
“we acknowledge and agree that this statement is and shall be governed by the
terms and conditions set forth in . . . 
the Deposit Agreement and Disclosures.”  
The relevant part of the deposit agreement states as follows:

 

All
joint accounts are presumed to be joint accounts with the right of survivorship
unless the applicable state law does not permit this presumption or we have
otherwise agreed with you in writing that the account is owned in another
capacity.  If the signature card you
signed when you opened your account indicates the capacity in which your
account is held, we may rely on that designation.  Right of survivorship means that when a
co-owner dies, the balance in the account belongs to the surviving co-owner(s),
subject to our right to charge the account for any amount the deceased co-owner
or a surviving co-owner owes us.

 

 

            Roy died on April 28, 2004.  The independent executrix, Shari Wilson
Vander Linden, filed an application to probate Roy’s will.  After Roy’s will was admitted to probate, the
executrix filed a motion for summary judgment seeking a declaration by the
court that Roy and Sharon’s three joint accounts did not pass to Sharon under
the joint right of survivorship clause and were therefore part of the probate
estate.  Sharon responded with her own
motion for partial summary judgment asking the trial court to declare that a
joint right of survivorship (“JROS”) was created by the three personal
signature cards along with the deposit agreement and disclosures.  The trial court entered a summary judgment
determining that a JROS had been created and that Sharon was entitled to the
three accounts as her property.  The
executrix timely filed this appeal.

 

Issues Presented

            In her first two issues, the executrix contends that the
trial court erred in granting Sharon’s motion for summary judgment while
denying hers.  In her third and fourth
issues, the executrix contends that Roy intended for the three bank accounts to
pass through his estate and that no JROS was created because he did not use a
declarative sentence establishing one in the contract creating these three
joint accounts.  Finally, in her fifth
issue, the executrix contends that these three accounts were part of the
probate estate because the court had approved the inventory, appraisement, and
list of claims listing them as property of the estate.

 

Standard of Review

            In this case, both parties filed a traditional summary
judgment motion.  See Tex. R. Civ. P. 166a(c).  A party moving for traditional summary
judgment carries the burden of establishing that no material fact issue exists
and that it is entitled to judgment as a matter of law.  Id.; Sani v. Powell,
153 S.W.3d 736, 740 (Tex. App.–Dallas 2005, pet. denied).  Summary judgment is particularly appropriate
where the parties do not dispute the facts and present only questions of law.  Crossmark, Inc. v. Hazar, 124 S.W.3d
422, 431 (Tex. App.–Dallas 2004, pet. denied). 
Where the parties do not dispute the facts, review of the summary
judgment properly focuses on whether the trial court correctly applied the law
to the facts.  Id.  We therefore review the trial court’s
summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  

            When, as here, both parties move for summary judgment on
the same issues and the trial court grants one motion and denies the other, we
consider the summary judgment evidence presented by both sides and determine
all questions presented.  Id.  If we determine that the trial court erred,
we render the judgment the trial court should have rendered.  Id. 


 

Rules of Contract Construction

            The signature card for a bank account is a type of
contract.  Whitney Nat’l Bank v.
Baker, 122 S.W.3d 204, 208 (Tex. App.–Houston [1st Dist.] 2003, no
pet.).  When the signature card incorporates
a deposit agreement, that agreement is also a part of the deposit contract
between the parties.  See Tex. Fin. Code Ann. § 34.301(a) (Vernon
Supp. 2006).  When construing a contract,
courts must strive to give effect to the written expression of the parties’
intent.  State Farm Life Ins. Co.
v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995).  To do so, they must read all parts of a
contract together.  Id.  Indeed, courts must be particularly wary of
isolating from its surroundings or considering apart from other provisions a
single phrase, sentence, or section of a contract.  Id.  

            Section 439(a) of the Texas Probate Code makes a written
agreement determinative of the existence of the right of survivorship in a
joint account.  Stauffer v.
Henderson, 801 S.W.2d 858, 863 (Tex. 1990).  When a contract is being construed to
determine whether it creates a JROS, and its terms are clear, extrinsic
evidence is not to be considered by the court. 
See id. at 864.

 

 

Statutory Creation of JROS

            Our legislature has established the way in which a JROS
can be established in a joint bank account. 
Section 439(a) of the Probate Code states in relevant part as follows:

 

(a)
Sums remaining on deposit at the death of a party to a joint account belong to the
surviving party or parties against the estate of the decedent if, by a written
agreement signed by the party who dies, the interest of such deceased party is
made to survive to the surviving party or parties.  Notwithstanding any other law, an agreement
is sufficient to confer an absolute right of survivorship on parties to a joint
account under this subsection if the agreement states in substantially the
following form: “On the death of one party to a joint account, all sums in the
account on the date of the death vest in and belong to the surviving party as
his or her separate property and estate.” 
A survivorship agreement will not be inferred from the mere fact that
the account is a joint account.

 

 

Tex.
Prob. Code Ann. § 439(a) (Vernon 2003).  In other words, there must be a written
agreement signed by the decedent and providing that upon the death of the
decedent, his interest survives to the other party.  In re Estate of Dillard, 98
S.W.3d 386, 396 (Tex. App.–Amarillo 2003, pet. denied).  That written agreement is determinative of
the existence of a JROS in a joint account. 
See Stauffer, 801 S.W.2d at 863.  Not only has the legislature made a written
agreement both necessary and sufficient for a right of survivorship in a joint
account, it has undertaken to specify language that will meet its
requirements.  Id.  Of course, in addition to this legislatively
drafted “safe harbor,” banks may also ask in plain language on their
applications, signature cards, or other documentation for joint accounts whether
or not their customers intend ownership of the funds remaining in the account
on the death of the joint account holder to go to surviving account
holders.  Id.  Thus, language substantially similar
to that in the Probate Code will be sufficient to establish a joint account
with right of survivorship.  See Allen
v. Wachtendorf, 962 S.W.2d 279, 284 (Tex. App.–Corpus Christi 1998,
pet. denied).

 

Joint Account with Right of Survivorship

            We will consider the executrix’s first four issues
together.  The heart of her contention is
that Section 439(a) of the Probate Code requires a declarative sentence to
establish a right of survivorship in a joint account.  We disagree. 
A joint account with right of survivorship can be established by placing
an “X” in the box next to that statement on the signature card.  See Banks v. Browning, 873
S.W.2d 763, 765 (Tex. App.–Fort Worth 1994, writ denied).  This language, not in a declarative sentence,
is sufficiently clear and unambiguous to establish a joint account with right
of survivorship.  See id.  

            The executrix also contends that the language in the
instant case is not sufficient under Stauffer.  There, the agreement establishing the joint
account included the following relevant language:

 

JOINT ACCOUNT – PAYABLE TO

EITHER OR SURVIVOR

 

.
. . We agree and declare that all funds now or hereafter deposited in this
account are and shall be our joint property, that either of us shall have power
to act in all matters relating to such account, whether the other be living or dead,
and that upon the death of either of us any balance in said account or any part
thereof may be withdrawn by, or upon the order of the survivor.  It is especially agreed that withdrawal of
funds by the survivor shall be binding upon us and upon our heirs, next of kin,
legatees, assigns and personal representatives. . . .

 

 

Stauffer, 801
S.W.2d at 859.  Our supreme court
determined that this language on the signature card was not substantially
similar to that set out in Section 439(a) and therefore held that no right of
survivorship had been created.  Id.
at 865-66.

            The signature card in Stauffer did not use
the term “right of survivorship” nor did it include any other language to
indicate that the parties intended to create a JROS.  The idea of “right of survivorship” is what
the parties must agree upon.  See Tex. Prob. Code Ann. § 439(a).  The agreement established must show the clear
and unequivocal intent of the parties to create a JROS.  Here, on all three signature cards, Roy and
Sharon put an “X” next to the statement “Joint with Right of Survivorship.”  They crossed out all other alternatives for
the disposition of their account on the signature cards for two of the
accounts.  The deposit agreement states
that “[r]ight of survivorship means that when a co-owner dies, the balance in
the account belongs to the surviving co-owner(s), subject to our right to
charge the account for any amount the deceased co-owner or a surviving co-owner
owes us.”  That sentence expands upon
what Roy and Sharon meant when they put the “X” in the “Joint with Right of
Survivorship” box.  Even though the
phrase “Joint with Right of Survivorship” on the signature card and the
sentence in the deposit agreement are abbreviated versions of the wording used
in Section 439(a), the language expresses the intent of Roy and Sharon on
August 18, 2003 to create a JROS in the accounts.

            Furthermore, although it does not specifically address
bank accounts with rights of survivorship language, we believe it is
instructive to look at Probate Code Section 452.  There, if an agreement is in writing and
signed by both spouses, it is sufficient to create a right of survivorship in
the community property described in the agreement if it uses the phrase “with
right of survivorship.”  See Tex. Prob. Code Ann.  § 452 (Vernon 2003).  This is consistent with the case law
interpreting Section 439(a).  See Banks,
837 S.W.2d at 765.

            We hold that the language used in the contracts
establishing the three joint accounts at issue substantially complies with the
requirements of Section 439(a) and that a right of survivorship was created in
each account.  We overrule the executrix’s
issues one, two, three, and four.

 

Claim Preclusion

            In her fifth and final issue, the executrix contends that
when the trial court approved her inventory, appraisement, and list of claims
showing the three joint accounts as part of Roy’s estate, Sharon was precluded
from attempting to establish her ownership in the three accounts through her
motion for summary judgment.  The
executrix cites us to the case of McKenzie v. Frost, 448 S.W.2d
520 (Tex. Civ. App.–El Paso 1969, writ ref’d n.r.e.).  We have reviewed that case, which involved a
title dispute to land and did not involve a probate proceeding.  See id. 
Therefore, we determine that it is inapplicable to the instant
case.  Further, an order of a probate
court approving an inventory and appraisement is not an adjudication of title
to property.  McKinley v. McKinley,
496 S.W.2d 540, 542 (Tex. 1973).  We
overrule the executrix’s issue five.

 

Disposition

            Having overruled the executrix’s five issues, we affirm
the judgment of the trial court. 

 

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

 

Opinion
delivered December 20, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(PUBLISH)