Opinion issued August 19, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00096-CV

———————————

Pu Chang Tsai, Appellant

V.

Han Kuei Su and
Sun Cha Su, Appellees



 



 

On Appeal from the 129th District
Court

Harris County, Texas



Trial Court Case No. 2000-38080

 



MEMORANDUM OPINION

          This
lawsuit arises out of the demise of a business relationship that involved the
ownership and operation of Mantai Shrimp Farm, Inc. (Mantai) in Aransas County,
Texas among plaintiffs-appellees Han Kuei Su and Sun Cha Su, appellant Pu Chang
Tsai, and Rong Dong Liao.  After Tsai
sued for alleged mishandling of the business, Tsai and the Sus signed a
mediated settlement agreement (MSA) on March 10, 2001 intending to resolve their
dispute by dividing the business’s assets and liabilities.  Despite the settlement, however, Tsai did not
dismiss his lawsuit.  In addition, challenges
to the meaning of certain of the MSA’s terms resulted in three arbitration
rulings, issued on June 11, 2001, January 31, 2002, and June 5, 2007, respectively.  

When Tsai still failed to perform
under the MSA, the Sus counterclaimed for breach of the MSA and moved the trial
court for summary judgment on that counterclaim.  Tsai appeals the trial court’s summary judgment
in favor of the Sus.  He first contends
that the trial court exceeded its authority to confirm an arbitration award.  Tsai further complains that the trial court’s
judgment impermissibly deviates from the terms of the arbitration awards by (a)
converting Tsai’s obligation to assume a debt into a requirement to pay a debt;
(b) requiring Tsai to pay Su’s attorney the specified sum before, rather than
after, the Sus convey their right, title, and interests in the Mantai Shrimp
Farm; (c) denying Tsai the right to offset the debt to Liao against any
potential recovery from Liao; (d) awarding the Sus post-judgment interest
on the arbitration award and their attorney’s fees in connection with the
summary judgment proceedings; and (e) appointing the Sus’ counsel as
trustee of the proceeds.  We conclude
that the trial court judgment amounts to confirmation of the arbitration awards
except to the extent it awards the Sus their attorney’s fees and post-judgment
interest.  We therefore modify the judgment
to omit the attorney’s fees and post-judgment interest awards and, as modified,
affirm.

Background

Tsai, the Sus, and Liao embarked on
a business plan involving the finance and operation of Mantai Shrimp Farm,
Inc.  The “Liao debt” refers to a $100,000
promissory note executed by Mr. Su, payable to Liao.  Liao used Su’s note toward payment of a purchase
money promissory note to Copano Ranch, Inc., from which Mantai originally acquired
the property.  Liao, in turn, executed a
promissory note and deed of trust lien naming Mantai as beneficiary.  The promissory note provides:

If Maker defaults in the payment of this note
or in the performance of any obligation in any instrument securing or
collateral to it, . . . then Payee may declare the unpaid principal balance and
earned interest on this Note immediately due, and Payee’s sole remedy is to
reclaim the property as provided in the Deed of Trust executed on this same
date.

The deed of trust lien contains two
nonrecourse provisions.  The first
provision specifies that if default occurs, 

[Mantai’s] SOLE REMEDY is to:

a.         request Trustee to foreclose this lien, in which case
[Mantai] or [its] agent shall give Grantor 30 days notice of the foreclosure by
Certified Mail Return Receipt Requested and Regular Mail;

b.         receive and recover any closing costs paid by [Mantai] at
the time of closing; and 

c.         reclaim the property at the scheduled foreclosure by
transferring the property to [Mantai].

The second provides: 

SPECIAL PROVISION:  [Mantai] acknowledges that [Mantai]’s right
and remedy were limited to reclaiming this property.  [Mantai] waives any and all rights to
foreclose on the property as provided under the Texas Property Code, except
those rights applicable to the performance of rights under this Deed of Trust.

Liao defaulted on the note, and Mantai foreclosed on
the deed of trust lien.  

          As their
business relationship proved untenable, the parties agreed to mediate the
claims and controversies between them relating to the operation, financing, and
sale of the property.  In the March 10,
2001 mediated settlement agreement (MSA), Tsai agreed to assume certain
obligations in exchange for Sus’ conveyance to Tsai of their ownership interest
in Mantai.  Both arbitration proceedings arising
out of the MSA centered on the provision that sets forth Tsai’s
obligations.  It provides: 

(2)     Mr.
Tsai assumes the following 

(A)    $12,500.00 payment to Robert Pham, trustee 

(B)     Debt to Central Power & Light Co. not to exceed $25,000.00

(C)     Note to Copano Ranch, Inc., or assigns & Liao debt only to
the extent it inured to the benefit and direct use of the corporation to pay
the note and taxes on the 183 acres.

          Shortly
after signing the MSA, a dispute arose concerning paragraph 2(A).  The parties returned to the arbitrator who
assisted them in reaching the settlement, who ruled that “[j]udgment should be
entered as agreed save and except that [Tsai] pays $5,000.00 cash instead of
the $12,500.00 [to Pham].”

The second arbitration award clarified
that (1) the amount of the note owed to Copano Ranch, Inc., or assigns was
$90,153.46; (2) the amount of the debt owed to Central Power & Light was
$23,455.53; and (3) the amount of the Liao debt, “only to the extent it inures
to the benefit and direct use of the corporation to pay the note and taxes on
the 183 acres,” was $87,629.73.  

          The third
arbitration ruling addressed the meaning of “assumes” as used in the
provision.  The arbitrator held that:

By agreeing to “assume” the obligations . .
., Mr. Tsai, in essence, agreed to make the obligations, debts and/or
liabilities his own and assumed an independent duty to perform whatever the
assumed obligations, debts and/or liabilities were to be.  In effect, Mr. Tsai steps into the shoes of
the party[] previously responsible for performance.  However, it is well settled in Texas that any
party assuming the obligations, debts and/or liabilities of another does so
subject to the terms and conditions of the debt or obligations being assumed
and further subject to any defenses, rights of offset, claims, or counterclaims
legally available to the parties.  

Therefore, by virtue of Mr. Tsai agreeing to
“assume” certain payments, debt and note as more particularly set forth in . .
. paragraph 2 (A), (B) & (C), Mr. Tsai is contractually obligated and
personally liable as the principal obligor to specifically perform under the
payment and performance terms and conditions set forth therein, subject only to
any defenses, rights of offset, claims or counterclaims that may be legally
available to him.

The parties did not submit any issue relating to
Su’s obligations under the MSA for arbitration. 


A year passed and Tsai still had
not performed his obligations under the MSA. 
In particular, he persisted in claiming that, because the property sold
at foreclosure for less than the amount of the note, he was entitled to an
offset or credit against the amount he owed under paragraph 2(C) of the MSA for
the note on the Liao debt.  

The Sus moved for summary judgment on
their breach claim, arguing that (1) the nonrecourse provisions in the promissory
note and deed of trust lien precluded Tsai’s claim to any offset or credit on
the $87,625.73 of Liao debt Tsai assumed under the MSA, entitling them to summary
judgment as a matter of law, and (2) there was no evidence of any offset
or credit available to Tsai.  The Sus
also asked the court to sever and abate their counter- and third-party claims
against Tsai and others to render the judgment final for purposes of
appeal.  

          The
trial court granted the Sus’ motion.  In its
December 22, 2008 final judgment, the trial court took judicial notice of and
incorporated by reference the arbitration rulings and awarded judgment in the
Sus’ favor and against Tsai for the amounts determined to be due by the January
31, 2002 arbitrator’s ruling as it interpreted paragraph 2 of the MSA, namely:
(1) $90,153.46, representing the amount of the note to Copano Ranch or its
assigns; (2) $87,629.73, representing the amount of the Liao debt; and (3)
$23,455.53, representing the amount of the debt due to Central Power &
Light.  The trial court ordered Tsai to
deliver the amounts to be paid to the Sus’ counsel for deposit into his trust
account.  The trial court directed the Sus
to perform their reciprocal obligations under the MSA following receipt of Tsai’s
payment.  The trial court also awarded
the Sus their attorney’s fees and pre- and post-judgment interest.  The court granted the Sus’ severance request,
rendering the judgment a final one.  This
appeal followed.

Discussion

I.       Effect
of arbitration awards on the Sus’ breach of contract claim

          Tsai
points out that the MSA, which provides the basis for the Sus’ breach of
contract claim, is also the subject of arbitration decisions interpreting
certain disputed provisions in that contract, and that the existence of the
arbitration rulings construing Tsai’s obligations under the MSA left the trial
court with the power only to confirm, modify, or vacate those arbitration awards.  Tsai claims that the trial court exceeded its
authority in awarding relief beyond that available under the arbitration awards.  

          To
determine whether we should review the Sus’ summary judgment motion as one
merely for confirmation of the arbitration awards or one for breach of contract
unconstrained by the prior arbitrations, we examine the plain language of the MSA’s
arbitration clause.  It provides:

If any dispute arises with regard to the
interpretation and/or performance of this Agreement, of any of its provisions,
the parties agree to submit such dispute to binding arbitration.  The arbitrator shall be selected by the
mutual [a]greement of the parties.  If
the parties cannot agree[] on the arbitrator, the parties agree that [the
mediator] shall have the right to designate the arbitrator, who must
acknowledge that he or she has no conflict of interest or bias in the
matter.  The parties shall equally share
and pay the costs of arbitration.  The
[a]rbitration shall be governed by the Rules of the AAA.  

The Sus’ breach of contract claim is a “dispute . .
. with regard to the interpretation and/or performance” of the MSA, and,
accordingly, is a claim that the parties agreed to arbitrate under this broad
provision.  The trial court’s authority is
therefore limited to vacating, modifying, or confirming the prior arbitration
awards.  See Tex. Civ. Prac. &
Rem. Code Ann. §§ 171.087, 171.088, 171.091 (Vernon 2005).

II.      Standard
of review

The Texas General Arbitration Act
(TGAA) specifically authorizes a trial court to hear an application for
confirmation following the same procedure used in other civil cases.  New
Med. Horizons II, Ltd. v. Jacobson, No. 01-09-00238-CV (Tex. App.—Houston
[1st Dist.] May 10, 2010, no pet.) (citing Crossmark,
Inc. v. Hazar, 124 S.W.3d 422, 430 (Tex. App.—Dallas 2004, pet. denied); see Tex.
Civ. Prac. & Rem. Code Ann. § 171.093.  “Thus, applications to confirm or vacate an
arbitration award should be decided as other motions in civil cases; on notice
and an evidentiary hearing if necessary.” 
Hazar, 124 S.W.3d at 430.  A party may move simply for enforcement or
for summary judgment on the award.  See id. 


An arbitration award has the same
effect as the judgment of a court of last resort, and a reviewing court may not
substitute its judgment for that of the arbitrators merely because it would
have reached a different result.  Universal Computer Sys., Inc. v. Dealer
Solutions, L.L.C., 183 S.W.3d 741, 752 & n.12 (Tex. App.—Houston [1st
Dist.] 2005, pet. denied) (citing CVN
Group, Inc. v. Delgado, 95 S.W.3d 234, 238 (Tex. 2002)); see Tex.
Civ. Prac. & Rem. Code Ann. § 171.093 (Vernon 2005); J.J. Gregory Gourmet Servs., Inc. v.
Antone’s Import Co., 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995,
no writ).  Judicial review of an
arbitration decision is “extremely narrow” because Texas law favors
arbitration.  Universal Computer Sys., Inc., 183 S.W.3d at 752.  Because arbitration is favored as a means of
dispute resolution, every reasonable presumption must be indulged to uphold the
arbitrators’ decision, and none is indulged against it.  CVN
Group, Inc., 95 S.W.3d at 238.

We agree with Tsai that the MSA’s
arbitration provision and the awards secured pursuant to that provision limit
the trial court to confirming, modifying, or vacating the arbitration awards under
the TGAA.  The trial court’s judgment
strives to comply with the prior arbitration rulings; the trial court
incorporated them by reference into its judgment and expressly referenced them
in determining the amount that Tsai owed the Sus.  The trial court thus properly acknowledged
the arbitration rulings as binding decisions governing the interpretation and
performance of the MSA in ruling on the Sus’ motion for enforcement and summary
judgment.  We nevertheless review the
judgment de novo to ensure that the trial court gave proper deference to the
arbitrator’s rulings.  

III.     Variances between the judgment and the MSA

Tsai complains of impermissible variances
between his obligations under the MSA, as clarified by the arbitration rulings,
and those imposed by the trial court’s judgment.  Specifically, he contends that the trial
court’s judgment erroneously requires that he pay the amount of the debt
obligations he assumed without accounting for any offset, appoints the Sus’
counsel as trustee for the funds, defers performance of the Sus’ obligations
under the MSA until after he makes that payment, and orders payment of
pre-judgment interest and attorney’s fees—all requirements that differ from or do not appear in the MSA.  We consider each of these contentions in
turn.

A.      Payment in lieu of assumption of debt

With respect to the requirement
that Tsai pay the amount of debt he assumed under the MSA, Texas courts
consistently treat an assumption agreement as an unconditional promise to pay
the debt assumed.  See, e.g., Straus v. Brooks,
148 S.W.2d 893, 896 (Tex. Comm’n App. 1941); Hill v. Hoeldtke, 142 S.W. 871, 874 (Tex. 1912) (observing that
when plaintiff accepted Hill’s promise to pay note, Hill’s obligation to pay
plaintiff’s note “was as binding as if Hill had executed and delivered
plaintiff his written obligation promising to pay same, and could no more be
revoked by any subsequent agreement between Hill and [the creditor] without the
consent of plaintiff than could any other obligation of Hill be revoked
independent of the assent of the payee whose rights had been established by the
concurrence of a promise to pay”); Shenandoah
Assocs. v. J & K Props., Inc., 741 S.W.2d 470, 493 (Tex. App.—Dallas
1987, writ denied) (observing that “when Shenandoah obligated itself to pay
Home[, the holder of the note], Shenandoah was not obligating itself to pay a
debt it owed J & K; rather, it was obligating itself to pay a debt to J
& K’s creditor, Home, and when Home agreed with J & K to accept
Shenandoah’s promise to pay the note, Shenandoah became the principal debtor on
the note and J & K became a surety for the debt”).  

B.      Right to offset

Tsai complains that the trial
court’s judgment denies him the right to offset against the debt he assumed, in
contravention of the MSA.  The Sus’
motion for summary judgment, however, rested in part on the ground that the
Liao debt that Tsai had agreed to pay was based on a non-recourse note.  “A nonrecourse note has the effect of making a
note payable out of a particular fund or source, namely, the proceeds of the
sale of the collateral securing the note.”  Fein v.
R.P.H., Inc., 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet.
denied); see also Messagephone, Inc. v.
Texas Life, Accid., Health & Hosp. Serv. Ins. Guar. Ass’n, 966 S.W.2d
133, 135 (Tex. App.—Austin 1998, no pet.) (observing that under nonrecourse
note, payee agreed to look only to property securing note rather than to
maker); Schultz v. Weaver, 780 S.W.2d
323, 324 (Tex. App.—Austin 1989, no writ) (acknowledging that nonrecourse
clause provided maker bore no personal liability for payment of note and payee
would only look to property securing note in event of default); Trafalgar Invs., Ltd. v. Westminster
Assocs., Ltd., 715 S.W.2d 745, 747 (Tex. App.—Austin 1986, no writ) (noting
that nonrecourse meant that in event of default, payee could look only to
collateral for unpaid funds).  The Sus
supported their summary judgment motion with the nonrecourse note as well as
Tsai’s admission during his deposition that no offset credit is available for
the Liao debt, and alternately moved for summary judgment on the ground that
there was no evidence of any offset or credit. 
Tsai did not raise a fact issue on this ground in the trial court and does
not contend here that any offset exists on which he could exercise that right.  We hold that the trial court properly applied
the arbitration rulings construing the nature of the Liao debt in determining that
no offset exists and requiring Tsai to pay the full amount of the Liao debt.




 

C.      Requirement
to pay Sus’ attorney as trustee 

Tsai next complains that the trial
court’s judgment erroneously appoints the Sus’ counsel as trustee for Liao debt
and defers performance of the Sus’ obligations under the MSA until after Tsai
makes payment to the Sus’ counsel.  Specifically,
Tsai asserts that the trial court’s judgment “reverse[s] the order in which the
obligations contained in the arbitration awards were to be performed.”  We disagree.  The MSA declares that the Sus are “to convey
all right, title & interests [the Sus] own in [Mantai] and 183 acres,” and,
in the next paragraph, directs Tsai to assume specified debts.  The MSA does not, however, direct that these
obligations be performed in any specific order or manner.  Further, we construe the trial court’s order
that Tsai pay Sus’ counsel as trustee as a reasonable means to ensure that all
parties perform their obligations under the MSA without unreasonable delay and to
facilitate transfer of the appropriate amount of funds to the three creditors
identified in the MSA.[1]  See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.091 (permitting court to modify or correct arbitration award if “the
form of the award is imperfect in a manner not affecting the merits of the
controversy”).  

The trial court’s judgment comports
with the MSA and does not alter any of Tsai’s obligations as construed in
arbitration.  We therefore hold that the
trial court did not err in specifying terms for discharging the parties’
obligations under the MSA.  

D.      Attorney’s fees and post-judgment interest

Tsai further contends that the
trial court did not have the authority to award the Sus their attorney’s fees or
post-judgment interest because the arbitration rulings do not contain such awards.  We agree that the trial court exceeded its
authority by granting attorney’s fees and post-judgment interest in the absence
of an arbitration award of those items. 
The MSA binds the Sus to pursue their claims in the abitral forum in the
first instance, and by adding fees and post-judgment interest, the trial court
impermissibly modified the arbitration awards. 
See Fogal v. Stature Constr., Inc.,
294 S.W.3d 708, 723 (Tex. App.—Houston [1st. Dist.] 2009, pet. denied); Kosty v. S. Shore Harbour Cmty. Assoc., Inc.,
226 S.W.3d 459, 465 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding
trial court erred by adding attorney’s fees to arbitration award); Kline v. O’Quinn, 874 S.W.2d 776, 781
(Tex. App.—Houston [14th Dist.] 1994,
writ denied) (concluding that trial court did not err in refusing to award attorney’s
fees where arbitration provision provided that “each party shall be responsible
for the fees of its own counsel” and arbitration award ordered that “each party
shall bear its own attorney’s fees”); see
also Tex. Fin. Code Ann.
§ 304.001 (Vernon 2005) (post-judgment interest provision applies to “money
judgment of a court in this state” (emphasis added)); Babcock & Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 236 (Tex.
App.—Houston [14th Dist.] 1993, writ denied) (holding that judicial proceeding
to confirm an arbitration award is in nature of enforcement proceeding, not
contract claim.  

Finally, Tsai complains that the
Sus are not entitled to recover attorney’s fees because the MSA does not
provide for fee recovery.  We
disagree.  An arbitrator may award
attorney’s fees if the arbitration agreement or applicable law supports such an
award. See Tex. Civ. Prac. & Rem. Code Ann. § 171.048(c) (Vernon 2005).  The MSA is silent concerning attorney’s fees,
but an arbitrator may find that the Sus are entitled to their attorney’s fees
under a breach of contract theory.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008).  Unlike the records in Kosty and Kline, the
record here does not reflect that the parties submitted the issue of attorney’s
fees to an arbitrator.  See Kosty,
226 S.W.3d at 465; Kline, 874 S.W.2d
at 785.  We therefore vacate the awards
of attorney’s fees and post-judgment interest in the judgment, modify to omit
those awards, and as modified, affirm.

Conclusion

          The
trial court’s judgment correctly confirms the arbitration award in requiring
Tsai to pay the sum equivalent to the debt he assumed and directing the parties
to execute their obligations under the settlement.  The trial court erred, however, in adding
attorney’s fees and post-judgment interest to the award.  We therefore modify the judgment to omit the
awards of attorney’s fees and post-judgment interest and affirm the remainder
of the judgment.

 

 

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Hanks and Bland.











[1]
          Tsai
waived any complaint about the absence of a requirement that the Sus’ counsel
obtain a bond or post security for serving as trustee under the judgment by
failing to request such relief in the trial court.  See
Tex. R. App. P. 33.1.