

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00221-CV

———————————————

2016 PARKVIEW CONDOMINIUMS DEVELOPMENT, LLC, Appellant and
Appellee

V.

LAWRENCE E. MARSHALL, Appellee and Appellant

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-338058-22

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant 2016 Parkview Condominiums Development, LLC (Parkview) appeals an order confirming an arbitration award in favor of Appellee Lawrence E. Marshall. The arbitrator determined that Marshall was entitled to the return of a $183,750 earnest money deposit that he had made under the terms of a contract to purchase a condominium because Parkview had been unable to close on the sale by the date specified in the contract.

Parkview moved to vacate the award by claiming that the arbitrator had exceeded her powers in awarding Marshall attorney's fees and costs. Parkview also claimed that the arbitrator had harbored evident partiality because she had a bias—which she revealed during the arbitration hearing—that had been created by a negative personal experience after she attempted to purchase a condominium. Parkview predicates its two issues on appeal on the two grounds that it raised to vacate the award. Marshall perfected his own appeal, raising a single issue contending that the trial court erred by not awarding him the attorney's fees that he had incurred in opposing Parkview's motion to vacate the award and in presenting his corresponding motion to confirm it.

We overrule the issues raised by both parties. For a host of reasons, the arbitrator did not exceed her powers by awarding fees to Marshall because the fee issue was within the ambit of the matters that she was required to decide; our limited

powers to review an arbitration award foreclose us from second-guessing that decision. Further, Parkview's claim that the arbitrator harbored an evident partiality also fails. The arbitrator's disclosure showed nothing more than that she had been interested in purchasing a condominium and had paid a deposit. When the development for the condominium did not go forward, her deposit was returned, but she remained interested in purchasing a condominium in the development. What triggered her disclosure was hearing the name of a person whom the arbitrator had dealt with about her potential purchase and who was also referenced as a person whom Marshall had spoken with about his purchase. Parkview's efforts to spin this routine occurrence into a fact that would give an objective observer pause about the arbitrator's objectivity misses the mark. Further, Parkview's counsel stated at the time of the arbitrator's disclosure that Parkview had no objection to the arbitrator's continued service. Though Parkview now argues that was not a waiver, we hold that it was.

Marshall's issue challenging the trial court's denial of his claim for attorney's fees is equally unavailing. The trial court operated within its discretion by denying the request. Though the arbitrator tried to transfer to the trial court her power to decide a fee issue, the contract provisions that Marshall cites do not authorize that hand off or make the fee issue one for the trial court. Further, in view of the arbitrator's fee award, it was within the trial court's discretion to decide that an additional fee award was not warranted.

3

Accordingly, we affirm the order granting Marshall's motion to confirm the arbitration award.

## II. Factual and Procedural Background

Marshall entered into a contract (the Contract) with Parkview to purchase a condominium. The Contract contained a provision that freed Marshall from the obligation to purchase the property should the closing fail to occur by November 1, 2019. This provision—Section 3.7—provides in full as follows:

> Section 3.7 <u>Failure to Close by November 1, 2019.</u> If Closing fails to occur by November 1, 2019, provided that Purchaser is not then in default, Purchaser may terminate this Contract and shall be entitled to the Earnest Money Deposit. In such event, the Title Company shall immediately disburse the Earnest Money Deposit to Purchaser upon written notice from the Purchaser to the Title Company. If the Seller wrongfully interferes with the proper disbursement of the Earnest Money Deposit, then Seller shall pay, upon the final order of the court with appropriate jurisdiction stating that Purchaser is entitled to such disbursement, all costs and reasonable attorneys' fees incurred by Purchaser in connection with its recovery thereof and both the costs and reasonable attorneys' fees of the Title Company. This Section 3.7 shall survive the termination of this Contract.

Marshall made the earnest money deposit referenced in the quoted paragraph by depositing $183,750 with the title company designated to act as escrow agent.

As the arbitration award (the Award) at issue described the controversies, the November 1, 2019 deadline came and went, but Marshall did not terminate the Contract; instead, he waited until November 2021—when Parkview indicated that it was ready to close—to invoke Section 3.7. Parkview contended that Marshall had waited too long to invoke the protections of Section 3.7 and was obligated to close.

4

Invoking the Contract's arbitration clause, Marshall filed a claim with the American Arbitration Association (AAA) seeking a declaration that he was not obligated to close and was entitled to the return of the earnest money deposit. Parkview responded with a counterclaim that Marshall was in breach of the Contract by failing to close in 2021.

An arbitrator was appointed to hear the parties' claims. After appointment of the original arbitrator, it was revealed that a member of his law firm was adverse to Parkview's counsel in another matter. Parkview objected to the original arbitrator's continued service. Apparently on the eve of the date that the arbitration was scheduled to begin, AAA removed the original arbitrator. Another arbitrator was appointed, and AAA sent the parties the new arbitrator's potential conflict disclosures; the record does not contain a copy of the disclosures. No objections were made to the new arbitrator, and the arbitration proceeded.

During the arbitration, a person's name was mentioned that triggered the disclosure by the arbitrator that is the basis of Parkview's claim of evident partiality. A person named Nancy Holloway was mentioned by Marshall during the arbitration hearing. Parkview's counsel later described Holloway as "a participant in the transaction between Mr. Marshall" and Parkview, without giving any further guidance as to what that participation was. A transcript of the arbitration proceedings documents what the arbitrator did when she heard Holloway's name and the disclosure that she then made:

5

THE ARBITRATOR:  You know, I think I need to make a disclosure[,] and I think I'll need to call Dennis [Baird, manager of ADR services with AAA] and tell him.  I'll make the disclosure now[,] and I'll tell him.

[MARSHALL'S COUNSEL]:  Sorry.

THE ARBITRATOR:  I looked at a condo development in Dallas several years ago at which Nancy Holloway was the person I worked with.  I have not -- the development did not happen.  It was canceled.  But[,] I think[,] let me call Dennis.  Let's take a recess.  Let me call Dennis and tell him[,] and then we'll go from there, okay?

[MARSHALL'S COUNSEL]:  Do you want us to step out?

THE ARBITRATOR:  No, I'll step out.  I mean, we'll take a break and hopefully, the day before the holiday weekend so hopefully he's in.  All right.

. . . .

THE ARBITRATOR:  Hi Dennis, it's [the arbitrator] and in the room with me is our court reporter, Joe Hendrick, we've got Mr. Chaiken, we've got his client's representative Doug Hickok.  We've got Mr. Richmond, his client Mr. Marshall, Mr. Sigety and another attorney with their firm, Ms. Samuel, and during the testimony a few minutes ago, Mr. Marshall raised a name that I did not see on . . . either . . . side's conflicts checklist or in any pleadings and the name was Nancy Holloway.

I disclosed and I am re-disclosing again that Ms. Holloway was the representative of a condo developer in Dallas[,] and I believe she was an outside employee, outside contracted person[,] but she was the representative of that developer in a condo development in Dallas.

I had several meetings with her.  I did -- I did not sign a contract to purchase.  I signed an indication of interest because the condo development never got beyond indications of interest.  I paid some money.  It became apparent that this condo development was never going to -- or was not going to happen in [a] reasonable time[,] and I think it was doing -- and it was all COVID related as well as some other issues that I don't even know and I got my $15,000 back.

6

I did speak to Ms. Holloway at some time that I don't recall in the last six to eight months to find out if they had -- were ever going to go back and redevelop that and she told me something about -- there might be -- seeing about announcing something in the fall of 2022. I have not spoken to her since that time.

But anyway, it was not this development[,] and it was not this developer. It was Rosewood[,] which is primarily a housing builder. Anyway, that is the disclosure[,] and I am going to step out of the room. Is that okay?

MR. BAIRD: Actually, before you step out, let me just ask counsel real quick. Does either counsel have any questions for [the arbitrator] based on that disclosure?

[MARSHALL'S COUNSEL]: No questions from claimant's counsel.

[PARKVIEW'S COUNSEL]: No questions from respondent's counsel.

MR. [BAIRD]: Okay. I would ask that [the arbitrator] step out of the room[,] and then Counsel, once she is done[,] if one of you can confirm that she is out of the room[,] and Mr. Hendrick will make a record.

After the arbitrator made her disclosure and left the room, the AAA representative asked if the parties objected to the proceeding continuing and received no objection:

MR. BAIRD: Based on the disclosure that [the arbitrator] made, does either side have any objection to her continued appointment in this matter?

[MARSHALL'S COUNSEL]: Claimant has no objection.

[PARKVIEW'S COUNSEL]: Respondent has no objection.

7

MR. BAIRD: Okay. You can go ahead and bring [the arbitrator] back in.

[MARSHALL'S COUNSEL]: She is being summoned.

(Arbitrator . . . enters the arbitration)

THE ARBITRATOR: I am back in the room.

MR. BAIRD: This will confirm [that] there are no objections to your continued appointment. You are reaffirmed[, and] you can proceed with the hearing.

After the arbitration concluded, the arbitrator provided the Award to the parties. The Award accepted Marshall's interpretation of Section 3.7—that it did not place a limitation of a "'reasonable time' or any other time frame" on Marshall's exercise of his right to terminate the Contract if Parkview were unable to close by that section's deadline. Based on that interpretation, the Award granted Marshall the declaratory relief that he sought to recover and the earnest money deposit and denied Parkview's counterclaims that Marshall had breached the Contract.

The Award then addressed the recovery of attorney's fees and the administrative fees and expenses of the arbitration. The Award addressed the arbitrator's basis for the fee award, was critical of the conduct of both parties' counsel, and awarded Marshall's counsel slightly more than fifty percent of the requested fees:

> Turning to the Parties' fees and costs, Section 3.7 provides that Respondent "shall pay . . . all costs and reasonable attorneys' fees incurred by Purchaser" if Claimant prevailed under Section 3.7. Costs are to be awarded to Claimant in the amount Claimant sought, and fees

8

to be awarded are to be "reasonable." Claimant's counsel William S. Richmond submitted a fee[-]and[-]expenses declaration asserting a claim for $116,614.50 in legal fees and $6,400.00 in expenses. Respondent's counsel Kenneth Chaiken submitted a fee[-]and[-]expenses declaration asserting a claim for $64,945.50 for legal fees plus costs. According to those submissions, Mr. Chaiken's hourly rate is higher than Mr. Richmond's and higher than those of anyone else in Mr. Richmond's firm who worked on this case. Of import to the "reasonable fee" determination here is my conclusion that the Parties' counsel were unnecessarily uncooperative with each other and wasted time and resources in ways that did not reasonably benefit the case preparation or the Parties, evidenced by filings and arguments in the record. Even counsels' fee submissions were unnecessarily petty in opining about the other side's representation and services provided. Counsels' conduct created unreasonable fee expense[s] now being sought by Claimant.

This case is premised on a [C]ontract that neither side contended was ambiguous, with each of the Claimant's claim and Respondent's counterclaim seeking total damages of $183,750.00 in Earnest Money Deposit. After consideration of both sides' fee submissions, the unnecessary and unproductive filings and arguments asserted, the disparity between what the sides requested in fees, and the fact that neither side contended the Purchase Contract was ambiguous (which could have required evidence of contract negotiation or interpretation), I find the reasonable fee and cost recovery to be awarded to Claimant to be $61,250.00 in fees and $6,400.00 in costs.

As provided in Section 3.7, the administrative fees and expenses of the American Arbitration Association totaling $5,750.00 and the compensation and expenses of both the prior arbitrator and the Undersigned Arbitrator totaling $29,100.00 shall be borne by Respondent. Therefore, 2016 Parkview Condominiums Development, LLC, shall reimburse Lawrence E. Marshall the sum of $20,300.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Lawrence E. Marshall.

The Award prompted Parkview to file suit claiming that the Award should be vacated,[1] which crystalized into the contentions of its first amended motion regarding why the Award should be vacated. The amended motion alleged three statutory grounds to vacate: (1) the Award was obtained by undue means; (2) the arbitrator exhibited evident partiality or engaged in willful misbehavior; and (3) the arbitrator exceeded her powers. These grounds to vacate the Award were all tied to its award of fees:

14. The [a]rbitrator granted remedies that were [not] authorized by the Contract. The [a]rbitrator exceeded her powers in awarding attorney's fees and costs to Marshall pursuant to Section 3.7, which authorizes a recovery of attorney's fees and costs only if Parkview wrongfully interfered with disbursement of the earnest money upon Marshall's timely exercise of a Section 3.7 termination. She also failed to award a Section 3.7 remedy in the manner expressly stated in the Contract. Section 7.4 of the Contract states that with respect to all provisions of the Contract, time is of the essence. Marshall did not timely exercise his termination right under Section 3.7, given that he did not attempt termination until October of 2020, almost eleven months after the November 1, 2019 date on which a Section 3.7 termination right accrued. Return of the earnest money to the buyer is a specific remedy available only upon the timely exercise of the termination right in Section 3.7[,] but the Contract does not authorize such a remedy in the event of an untimely termination.

15. But even if . . . Marshall['s] termination was timely, there is no finding by the [a]rbitrator that Parkview, as Seller, wrongfully interfered with the title company's release of the earnest money upon his putative exercise of the Section 3.7 termination right. Thus[,] the award of attorney's fees and costs awarded by the [a]rbitrator is not an award within her expressly specified powers, which are limited to awarding only the specific relief provided expressly, in the Contract.

---

[1]Marshall moved to transfer venue of the proceeding to Dallas County. The trial court denied that motion. No issue regarding venue is raised on appeal.

The fact that the arbitrator awarded AAA its fees was also alleged to be an additional example of evident partiality.

In turn, Marshall filed a motion to confirm the Award and responded to Parkview's motion to vacate. These pleadings chronicled how the arbitrator who had heard the proceeding had been appointed, attached the transcript of the portion of the proceeding during which the arbitrator had made her disclosure and then continued without objection, and responded to the legal arguments raised by Parkview. The focus of Marshall's arguments was that the arbitrator's conduct did not support a claim of evident partiality or other misconduct and that the fee awards were supported by the Contract and Texas law and were within the arbitrator's power to make. Marshall also sought the fees incurred to litigate its motion to confirm the Award and filed written evidence to support the amount of fees he sought.

The trial court conducted two hearings on the parties' motions. The first hearing resolved little because the trial court concluded that a hearing on the motion to confirm was premature as Parkview's motion to vacate should be heard first.

During the second hearing, Parkview's counsel was permitted to offer testimony through his statements as an officer of the court. Counsel contended that Parkview was not foreclosed from claiming that the arbitrator had exhibited evident partiality even though Parkview had stated that it had no objection to her continuing after she made her disclosure. Parkview argued that the arbitrator's partiality did not become apparent until she made the Award:

11

So, Judge, the standard for that is evident partiality occurs when there's been a failure to disclose facts by the arbitrator which, to an objective observer, create a reasonable impression of her partiality. She's supposed to be impartial.

When we got an award from the arbitrator that included a penalty as a remedy in a manner that ignored the provisions of the [C]ontract itself and that exceeded the scope of what the [C]ontract allowed, it became evident to us, as an objective observer, that there was, in fact, evident partiality that had led to prejudice in the form of the imposition of the final award in its entirety, and in particular, the penalty, at which time we filed this proceeding which is, in fact, an objection under 088[2] based upon prejudice caused by evident partiality.

So that is when we formally objected, once we had the information that, in fact, there had been evident partiality. I think it's clear to any objective observer that had the full scope of those facts been identified, and in a manner which gave us a reasonable opportunity to evaluate them and to react to them, which we did not have as contemplated by [the relevant case law] . . . .

Parkview's counsel also elaborated on the argument regarding why Parkview contended that the fee awards exceeded the arbitrator's powers.

After the hearing, the trial court signed an order that confirmed the Award and denied Parkview's amended motion to vacate. The order stated that it was not awarding fees or costs "to Confirm/Vacate the Arbitration Award."[3] Both Parkview and Marshall filed notices of appeal.

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088.

[3] The title company holding the escrow money had intervened in the proceeding, and its claims were nonsuited.

## III. Analysis

### A. We set forth the statutory grounds that Parkview alleged to vacate the Award.

In this appeal, Parkview relies on two statutory grounds in the Texas Arbitration Act for vacating the Award: the arbitrator exceeded her powers, and its rights were prejudiced because the arbitrator acted with evident partiality. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A), (a)(3)(A) ("On application of a party, the court shall vacate an award if[] . . . the rights of a party were prejudiced by[] . . . evident partiality by an arbitrator appointed as a neutral arbitrator; . . . [or] the arbitrator[] . . . exceeded [her] powers[.]").

### B. We reject Parkview's contention that the arbitrator exceeded her powers.

Parkview argues in its first issue that the arbitrator exceeded her powers by awarding Marshall attorney's fees. We overrule the issue. First, we lack a record that permits review of the issue. Second, Parkview's argument is not that the arbitrator lacked the power to make her fee determination but that she erred in how she decided the fee question. Whether the arbitrator properly decided a question that she had the power to make is outside our limited scope of judicial review of an arbitration award.

#### 1. We set forth how we review and the standards that apply to the question of whether an arbitrator exceeded her powers.

We review de novo the question of whether the arbitrator exceeded her powers. *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston

13

[14th Dist.] 2014, pet. denied).  As with any contract, we determine whether the arbitrator had the authority to make a decision by reviewing the arbitration agreement between the parties because that is the source of the arbitrator's power to decide an issue.  *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011).

If we conclude that the arbitrator has the authority to make a decision, then our review is highly circumscribed; simply, our review is whether the arbitrator had the authority to make the decision and not whether that decision is correct.  Our sister court has encapsulated the unilateral power of an arbitrator to interpret a contract and apply the law to it as follows:

> [A]n arbitrator exceeds his authority when he disregards the contract and dispenses his own idea of justice.  *See Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Townes Telecomms., Inc. v. Travis, Wolff & Co.*, 291 S.W.3d 490, 494 (Tex. App.—Dallas 2009, pet. denied); *see also Oxford Health Plans LLC v. Sutter*, [569] U.S. [564, 569], 133 S. Ct. 2064, 2068 . . . (2013).  However, an arbitrator does not exceed his authority simply because he may have misinterpreted the contract or misapplied the law.  *See Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App.—Dallas 2009, no pet.) ("Thus, improvident, even silly interpretations by arbitrators usually survive judicial challenges." (quotation omitted)); *see also Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex. App.—Houston [14th Dist.] 1995, no writ).  "[A]n arbitrator does not exceed her authority by committing a mistake of law[] but instead by deciding a matter not properly before her." *LeFoumba v. Legend Classic Homes, Ltd.*, No. 14-08-00243-CV, 2009 WL 3109875, at *3 (Tex. App.—Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.); *accord Ancor Holdings*, 294 S.W.3d at 830.  "Thus, the appropriate inquiry is not whether the arbitrator decided an issue *correctly*[] but instead whether she had the authority to decide the issue **at all**." *LeFoumba*, 2009 WL 3109875, at *3.

*Bernhard*, 423 S.W.3d at 534.

What is sometimes termed an "essence test" applies to decide whether a decision is within the arbitrator's ambit; the "essence test" is "whether the basis for the award 'is rationally inferable' from the parties' arbitration agreement." *Taylor Morrison of Tex., Inc. v. Fulcher*, No. 13-20-00332-CV, 2022 WL 3092553, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2022, pet. denied) (mem. op.). Stated a bit differently, in our task of determining whether an arbitrator exceeded her powers, we examine the language of the arbitration agreement and "resolve any doubts concerning the scope of what is allowed in favor of arbitration." *Infinity Cap. II, LLC v. Strasburger & Price, LLP*, No. 01-15-00691-CV, 2016 WL 4254137, at *5 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, pet. denied) (mem. op.). Further, "[w]hen an arbitration clause employs broad language . . . , it is construed as evidencing the parties' intent to be inclusive rather than exclusive." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 685 (Tex. App.—Dallas 2010, pet. denied) (cataloging cases with broadly phrased arbitration clauses).

In essence, the question before us funnels down to whether the arbitrator was presented with the question of who should be awarded fees; if so, we cannot second-guess the decision. Again, quoting the Fourteenth Court of Appeals,

> We do not pass judgment on whether an arbitrator correctly awarded attorney's fees under the law[] but instead whether the issue of attorney's fees was properly before him. *See Bernhard*, 423 S.W.3d at 534 ("We pass no judgment on whether the arbitrator made a correct decision under the law and facts of this case."); *Centex/Vestal*, 314 S.W.3d at 684. In determining whether the arbitrator has exceeded his power, any doubt concerning the scope of what is arbitrable is resolved in favor of

arbitration. *Centex/Vestal*, 314 S.W.3d at 684. When there is a broad arbitration clause, arbitration of a particular claim should not be denied unless it can be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

*5177 Builders, Ltd. v. K&G Ests. LLC*, No. 14-20-00853-CV, 2022 WL 4243855, at *1

(Tex. App.—Houston [14th Dist.] Sept. 15, 2022, no pet.) (mem. op.).

A principle with similarly sweeping import to the one that a broadly phrased

arbitration provision is construed inclusively is that the parties will be held to their

decision to submit an issue to an arbitrator:

> The authority of arbitrators is also derived from the matters submitted for determination. *See City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518–19 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (considering scope of arbitration pleadings and parties' agreement to determine whether arbitrator exceeded his authority); *Island on Lake Travis* [*, Ltd. v. Hayman Co. Gen. Contractors, Inc.*], 834 S.W.2d [529,] 533 [(Tex. App.— Austin 1992), *vacated pursuant to settlement*, 848 S.W.2d 84 (Tex. 1993)]. Arbitrators do not exceed their authority when the matter addressed is one which the parties agreed to arbitrate. *See Pheng* [*Invs., Inc. v. Rodriquez*], 196 S.W.3d [322,] 329–30 [(Tex. App.—Fort Worth 2006, no pet.) (op. on reh'g), *abrogated on other grounds by Hoskins v. Hoskins*, 497 S.W.3d 490 (Tex. 2016)].

*Centex/Vestal*, 314 S.W.3d at 686.

And beyond the legal constraints on our review, a party wishing to challenge an

award must bring us a record complete enough to establish its claimed basis to vacate.

*Id.* at 684. Without that record, "we must presume the arbitration evidence adequately

supported an award." *Id.*

16

**2.** **The principles we have cited demonstrate that the arbitrator had the power to and did determine the fee issue. We cannot second-guess her ruling on that issue.**

Parkview attempts to construct an argument by reading a limitation into the arbitration agreement of the Contract and then superimposing that limitation on the Contract provision that the arbitrator relied on to award fees. Parkview begins by highlighting one sentence of the arbitration agreement in the Contract: "Section 7.27 of the Contract – its agreement to arbitrate – expressly provides that '[a]ll claims for breach of this Contract or otherwise are limited solely to the *specific remedies* provided for herein.'" [Emphasis added.] Parkview then pivots to find a limitation in the "specific remedies" that Section 3.7 provides through the language that we italicize below in that paragraph's text:

> Section 3.7 <u>Failure to Close by November 1, 2019.</u> If Closing fails to occur by November 1, 2019, provided that Purchaser is not then in default, Purchaser may terminate this Contract and shall be entitled to the Earnest Money Deposit. In such event, the Title Company shall immediately disburse the Earnest Money Deposit to Purchaser upon written notice from the Purchaser to the Title Company. *If the Seller wrongfully interferes with the proper disbursement of the Earnest Money Deposit, then Seller shall pay, upon the final order of the court with appropriate jurisdiction stating that Purchaser is entitled to such disbursement, all costs and reasonable attorneys' fees incurred by Purchaser in connection with its recovery thereof and both the costs and reasonable attorneys' fees of the Title Company.* This Section 3.7 shall survive the termination of this Contract. [Emphasis added.]

From the highlighted provision, Parkview constructs an argument that Section 3.7 creates a precondition to the award of attorney's fees that the arbitrator

17

failed to find had occurred and thus must have ignored. The most succinct formulation of this argument is the following from Parkview's reply brief:

> No award of attorney's fees and costs was permitted under Section 3.7 unless there was an express finding by the [a]rbitrator of wrongful interference as described by Section 3.7. The [a]rbitrator ignored the predicate language of Section 3.7 that authorizes an attorney fee and cost award to the Purchaser only "**[i]f the Seller wrongfully interferes** with the proper disbursement of the Earnest Money Deposit." The [a]rbitrator nevertheless awarded Marshall over $86,000 in attorney's fees and expenses as a prevailing party (although not authorized to do so anywhere in the [C]ontract) essentially converting an attorney's fee award into a penalty or sanction (as discussed below). The [a]rbitrator exceeded her authority by awarding attorney's fees and costs not authorized by the [C]ontract between the parties with no finding of conduct that would allow for such an award, contractually. A partial vacatur is thus warranted.

Parkview's argument has several fatal flaws. First, we have no transcript of the arbitration testimony. We do not know what the factual record was on the question of Parkview's interference with release of the earnest money deposit. Parkview's brief states at one point that "the only evidence of any communication with the title company by Parkview was its notice confirming its competing claim to the earnest money, so that it remained in escrow pending a determination of which of the parties was entitled to receive it." But there is no record reference to support this statement, and nothing to support it appears in the record before the trial court. In this circumstance, "we must presume the arbitration evidence adequately supported an award." *5177 Builders, Ltd.*, 2022 WL 4243855, at *1.

18

Next, Parkview's argument is selective in its quotation of the Contract's arbitration provision, which when read as a whole is a broad delegation to the arbitrator to decide controversies arising under the Contract. The full text of the arbitration provision is as follows:

> Section 7.27 <u>Arbitration/Limitation of Claims.</u> All claims for breach of this Contract or otherwise are limited solely to the specific remedies provided for herein. *Purchaser and Seller hereby further agree that any controversy, claim[,] or dispute arising out of or relating to (a) the Contract*, (b) any breach thereof, (c) the sales transaction reflected in the Contract, (d) the construction of the Subject Property, and/or (e) any representations or warranties, express or implied, relating to the Subject Property, *shall be decided by arbitration in accordance with the rules of the American Arbitration Association. All decisions by the arbitrators shall be final, and any judgment upon the award rendered by the arbitrators may be confirmed, entered[,] and enforced in any court having proper jurisdiction.* Any action, regardless of form, arising out of the transactions under this Contract must be brought by Purchaser within two (2) years and one (1) day of [the] date [that] the cause of action accrues. [Emphasis added.]

Thus, the arbitration provision had a limitation, but it also vested the arbitrator with the authority to make a final decision of claims arising from the Contract and how the limitation applied. We apply the test that "[w]hen there is a broad arbitration clause, arbitration of a particular claim should not be denied unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.*

Under the strictures of that test, we cannot say with positive assurance that the arbitration clause did not encompass the question that the arbitrator decided on the question of fees. Instead, Parkview seeks to have us turn this rule on its head and

narrowly construe the arbitration provision or apply it so that it presumptively excludes claims. By vesting the arbitrator with authority to make a final decision with respect to a controversy "arising out of or relating to" the Contract, Parkview agreed to allow the arbitrator to decide the question that Parkview would now have us second-guess.

Also, the Award recites that the parties submitted fee requests for and proof of their fees to the arbitrator. This conduct is inconsistent with the claim that the arbitrator exceeded her powers by resolving the very issue that the parties sought to have her resolve.

And there is another flaw in Parkview's argument. Parkview argues that the arbitrator made an erroneous decision in her implied finding that Parkview's actions constituted the type of interference that permitted a recovery of attorney's fees under Section 3.7 and also erred by not making an explicit finding with the reasoning for her decision regarding why Parkview's actions constituted interference. Again, as the authority we quoted above demonstrates, our review is limited to whether the provisions in question are not susceptible to an interpretation granting the arbitrator the power to make the decision by placing the question in the arbitrator's purview. Parkview's argument is that the arbitrator misapplied the section rather than that she had no power to make a fee award. That question is outside the scope of our review. For example, Parkview assumes that the language it highlights in Section 3.7 must mean that it interfered with the title company to stop the return of the earnest money.

But the arbitrator may have also considered as wrongful interference Parkview's action in challenging Marshall's ability to recover the earnest money. As it was the arbitrator's decision to determine what the provision means, whether that interpretation is wrong or right is not one within our limited scope of review.

We overrule Parkview's first issue.

### C. Parkview cannot vacate the Award by claiming that the arbitrator acted with evident partiality.

In its second issue, Parkview argues that the trial court erred by confirming the arbitration award, in whole or in part, in the face of clear evidence that Parkview's rights were prejudiced by the arbitrator's evident partiality. The arbitrator spoke to an outside representative of a developer to discuss a possible purchase of a condominium. Though we do not know the particular role of the person, the same representative apparently spoke to Marshall. The arbitrator indicated that she had made a deposit, which was eventually returned to her when the pandemic delayed the development. She was apparently still interested in the development because she later inquired about the status of the development with the representative. What apparently prompted the arbitrator to mention these events was not that she was interested in the condominium at issue but hearing the representative's name during the arbitration hearing.

From the timing of the disclosure and her subsequent ruling permitting Marshall to recover a portion of his fees, Parkview sees dark motives that evidence

21

partiality on the part of the arbitrator. We do not. The arbitrator had a commonplace experience of inquiring about and making a deposit as an indication of interest in a property, receiving her money back when the property was not developed, and apparently remaining interested in making a purchase. The trial court acted within its discretion to find that the inference of bias that Parkview tries to draw is too speculative and remote from the arbitrator's disclosure of a common life experience that seems not to have soured her on purchasing a condominium. And, paradoxically, Parkview told the trial court that when the disclosure was made, it did not view what the arbitrator revealed as evidencing partiality. Now, Parkview tries to excuse that position and its statement that it had no objection to the arbitrator's continued service by claiming it did not suspect her of partiality until she made her fee award. Parkview's wait-and-see approach waived its partiality claim. Also, in addition to the fact that the fee decision was within the arbitrator's ambit to make, Parkview never confronts the contradiction of why if the arbitrator was out to get Parkview, she slashed the amount of Marshall's counsel's fees and criticized his counsel's conduct while doing so.

1. **We set forth the standard of review that applies to the trial court's decision that the arbitrator did not act with evident partiality.**

The standard of review for questions of whether an arbitration award should be vacated because the arbitrator exhibited evident partiality is de novo, but the question

22

also has an inherent factual component that increases the deference we show a trial court's decision. As the Fourteenth Court of Appeals has noted,

> We review a trial court's order setting aside or vacating an arbitration award under a *de novo* standard of review. *See Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Review of a trial court's decision on evident partiality also involves a factual inquiry. *See id.* When a trial court resolves fact disputes in the context of a claim of evident partiality or misconduct, we review the trial court's fact findings for legal and factual sufficiency while legal conclusions are reviewed *de novo*. *See id.* (quoting *Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 66 (Tex. App.—El Paso 2010, pet. denied)). Where, as here, no findings of fact or conclusions of law are issued by the trial court, we imply all facts supported by the evidence and necessary to support the judgment. *See BMC Software Belg*[.], *N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The trial court's order will be affirmed if it can be upheld on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109.

*Builders First Source-S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 455–56 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

### 2. We set forth the standards for determining when an arbitrator's conduct creates a reasonable impression that the arbitrator exhibited evident partiality.

As we have noted, one of the statutory grounds to challenge an arbitration award is whether the arbitrator's evident partiality prejudiced a party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(2)(A). The test to determine if a disclosure prompts a concern about partiality is whether the disclosure would impact an objective observer's reasonable impression of the arbitrator's partiality:

> "Evident partiality is established by the nondisclosure of 'facts which might, to an objective observer, create a reasonable impression of the

23

arbitrator's partiality[,'] regardless of whether the nondisclosed information necessarily shows partiality or bias." *Forest Oil Corp. v. El Rucio Land [&] Cattle Co.*, . . . 518 S.W.3d 422, 431 (Tex. 2017) (quoting *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 524 (Tex. 2014)). "However, if an objective observer could not believe the undisclosed information might create a reasonable impression of partiality, the information is trivial[,] and the arbitrator did not exhibit partiality by failing to disclose it." *Amoco D.T. Co.* . . . , 343 S.W.3d [at] 844 . . . .

*Sebastian v. Wilkerson*, No. 09-18-00223-CV, 2019 WL 470087, at *3 (Tex. App.—

Beaumont Feb. 7, 2019, no pet.) (mem. op.).

The trigger for disclosure depends on the materiality of the information

revealed:

> An arbitrator is only required to disclose facts that are material. *Forest Oil Corp.*, 518 S.W.3d at 431. The consequences of the nondisclosure should be directly tied to the materiality of the unrevealed information. *Mariner Fin. Grp., Inc. v. Bossley*, 79 S.W.3d 30, 32–33 (Tex. 2002). A party should have access to all information that might reasonably affect the arbitrator's partiality, which would obviously include a familial or close social relationship. *Amoco D.T. Co.*, 343 S.W.3d at 843. However, an arbitrator is not required to disclose "'trivial'" matters. *Forest Oil Corp.*, 518 S.W.3d at 431 (quoting *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 637 (Tex. 1997)). "Some undisclosed relationships are too insubstantial to warrant vacating an award." *Id.* Because the party asserting evident partiality has the heavy burden to establish specific facts that indicate an improper motive on the part of the arbitrator, the alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, and speculative. *Int'l Bank of Commerce-Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 44 (Tex. App.—Corpus Christi[–Edinburg] 1998, pet. denied).

*Id.* In other words, remote contacts are not probative of evident partiality. *See also*

*Burke v. Hous. PT BAC Off. Ltd. P'ship*, No. 01-21-00288-CV, 2024 WL 187445, at *7

(Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op on reh'g) ("The

24

remote contacts about which the Landlords complain do not demonstrate evident partiality."); *Sebastian*, 2019 WL 470087, at *4 (concluding arbitrator was not required to disclose her prior relationship with homeowners concerning purchase from their business fifteen years before arbitration occurred because nondisclosure was based on remote relationship that had no effect on arbitrator's interest in outcome of arbitration); *Dotcom Ltd. Co. v. DP Sols., Inc.*, No. 12-16-00340-CV, 2017 WL 3224887, at *4 (Tex. App.—Tyler July 31, 2017, no pet.) (mem. op.) ("A relationship between an arbitrator and a party 'must be ongoing and direct rather than speculative and remote' in order to support a claim of arbitrator partiality.").

Also, simply because some prior life experience of an arbitrator creates a potentially negative predisposition toward one party to the arbitration, the arbitrator is not required to catalog every such experience in her disclosure. For example, a federal court held that an arbitrator who had been involved as a plaintiff in a similar type of lawsuit as he was arbitrating was not required to disclose that involvement. *See Trimark Hotel Corp. v. Int'l Union of Operating Eng'rs Loc. Union No. 70*, 593 F. Supp. 3d 885, 898–99 (D. Minn. 2022). As the opinion explained, there must be some concrete relationship between the arbitrator and a party rather than the suggestion of some amorphous institutional predisposition to trigger disclosure:

> By contrast, the alleged suggestion of bias in this case does not involve a connection between the arbitrator and either party to the arbitration. Rather, it arises from [the arbitrator's] personal involvement in a prior employment-discrimination lawsuit against a former employer. [Appellant] does not cite any case, and this [c]ourt's own research has

not identified one, in which a court has vacated an arbitration award for a similar nondisclosure. In suggesting that such a failure to disclose creates disqualifying "evident partiality," [appellant] essentially argues that because [the arbitrator] once believed he had a viable claim that he was wrongfully terminated by his own employer and sued that employer, he would be biased against any employer accused of wrongfully discharging any employee. However, the facts do not reasonably suggest that he is forever predisposed in favor of any employee involved in a dispute against any employer. *Uhl v. Komatsu Forklift Co.* . . . , 512 F.3d 294, 306 (6th Cir. 2008) ("It is not enough to demonstrate an amorphous institutional predisposition toward the other side.").

*Id.* at 899.

### 3. We conclude that the trial court could find the arbitrator's disclosure did not support a claim of evident partiality.

We are unable to understand how what Parkview claims the arbitrator failed to disclose was material or how it was outside the ambit of the trial court's factfinding powers to find that it was not material. In essence, the arbitrator revealed that she had spoken to a person who had also spoken to Marshall about a condominium purchase. This person was apparently not an employee of Parkview but had an affiliation with a different developer. According to the arbitrator, the following was the scope of her discussions:

> I disclosed and I am re-disclosing again that Ms. Holloway was the representative of a condo developer in Dallas and I believe she was an outside employee, outside contracted person but she was the representative of that developer in a condo development in Dallas.
>
> I had several meetings with her. I did -- I did not sign a contract to purchase. I signed an indication of interest because the condo development never got beyond indications of interest. I paid some money. It became apparent that this condo development was never going to -- or was not going to happen in [a] reasonable time[,] and I

26

think it was doing -- and it was all COVID related as well as some other issues that I don't even know and I got my $15,000 back.

I did speak to Ms. Holloway at some time that I don't recall in the last six to eight months to find out if they had -- were ever going to go back and redevelop that and she told me something about -- there might be -- seeing about announcing something in the fall of 2022. I have not spoken to her since that time.

Thus, the arbitrator apparently paid some money to obtain some right in a property, the pandemic intervened, and the money was returned to her. Apparently, she was still interested in the property. The arbitrator's statements did not disclose any concrete relationship with a party and did not even disclose an amorphous institutional predisposition against the sellers of condominiums in general.

Further, when the disclosure was made, Parkview met it with indifference. Given the opportunity to ask the arbitrator further questions after her statement— such as if the arbitrator had a good or bad experience with Holloway—Parkview's counsel stated that he had none. Asked if he had an objection to the arbitrator's continued service, Parkview's counsel stated that he had none.

At bottom, how the arbitrator's experience would sway the arbitrator to carry some ire against Parkview is unexplained. Even if her experience negatively impacted the arbitrator's views of condominium developers—which nothing indicated that it would—it is also unexplained how that experience created an inference that the arbitrator held a bias because it did not reveal facts suggesting a potential bias that

27

were "direct, definite, and capable of demonstration rather than remote, uncertain, and speculative." *See Sebastian*, 2019 WL 470087, at \*3.

What Parkview argues instead is that the disclosure must have been material because when the arbitrator heard Holloway's name, the arbitrator mentioned her dealings with her. Specifically, Parkview argues that

> [i]n the case at hand, the [a]rbitrator's initial non[]disclosure of her personal experience in a similar transaction and subsequent partial disclosure in the middle of the final hearing[] cannot be considered trivial. After all, she eventually found a need to make amended disclosures. Rather than candidly and honestly detailing all of the facts of her experience, she disclosed only the very basics, while assuring the parties that she could continue to preside in a fair and impartial manner.

This argument is unpersuasive because the inference that Parkview tries to draw is absent. It was the arbitrator's contact with a certain person rather than her experience with a condominium purchase that triggered her disclosure. Indeed, until hearing the person's name, the arbitrator apparently did not think her experience in considering buying a condominium warranted disclosure.

Perhaps the best summary of why the arbitrator's experience did not warrant disclosure came from Parkview's counsel, who offered this explanation to the trial court regarding why Parkview did not object when the arbitrator made her disclosure: "*The disclosure gave no indication of evident partiality at the time it was made*; therefore, we did not object to her continuation as the arbitrator at that time." [Emphasis added.] Thus, Parkview's own words contradict its contention that the arbitrator must have

28

been concealing material information that she knew should have been previously disclosed.

Trying to excuse its failure to object, Parkview argues that the arbitrator's partiality did not become evident until she made her award that included the fees that were discussed in the prior section of this opinion. In Parkview's words,

> [W]e know that the [a]rbitrator's partiality manifested itself in her final award, where she imposed as a penalty, an attorney fees and cost payment penalty upon Parkview that was supported by no evidence, let alone critically necessary evidence and an associated finding of wrongdoing by Parkview that not only did not exist[] but [also] could not exist[] because objecting to the release of earnest money to allow for litigation of who is entitled to the money[] can never be a wrongful act[] even if it delays release of the funds.

To make this argument, Parkview ignores the facts that undermine it. As noted, the arbitrator cut the fee award to Marshall's counsel by almost fifty percent of what was sought. How a ruling so contrary to Marshall's position supports an inference that the arbitrator held a hidden ire toward condominium developers is another conclusion that Parkview leaves unexplained.

Further, we have already held that the fee issue was within the arbitrator's ambit to decide. Parkview cannot transform its disagreement with a decision that the arbitrator had the discretion to make into evidence of bias. Even if we were to accept that a ruling by an arbitrator could be probative of bias, Parkview's argument asks us to vacate the Award based on its self-serving speculation that the ruling was motivated by bias and not the arbitrator's good-faith resolution of a question that was

properly before her. *See, e.g.*, *Aalfs Fam. P'ship v. GSL Holdings, S.A. de C.V.*, No. 21-CV-4038-CJW-KEM, 2022 WL 1504872, at *19 (N.D. Iowa Apr. 11, 2022) (order) (stating that "respondents imply that some kind of personal preference must have existed for [the arbitrator] to act as he did"; that "[e]ssentially, respondents ask the [c]ourt to find that because [the arbitrator] made rulings and excluded important evidence in petitioners' favor, he must have had a relationship that favored petitioners"; and that "[t]his argument is pure speculation").

An implied finding of the trial court was that the information the arbitrator failed to disclose was not material. Both the nature of the information and Parkview's indifference to it support that finding. Nor can Parkview argue that it was awakened to the arbitrator's partiality by the Award. That argument is both a back-door attempt to have us review the merits of the Award—which we cannot do—and an inference at odds with a ruling that negatively impacted Marshall.

### 4. The record also supports an implied finding that Parkview waived its evident-partiality ground to vacate the Award.

Parkview argues that we should turn a blind eye to the fact that once the arbitrator made her disclosure, Parkview's counsel stated that it had "no objection" to the arbitrator's continued service. To make this argument, Parkview embellishes the nature of the disclosure and offers an unpersuasive excuse why the disclosure did not prompt the need to make an objection if Parkview had one.

The Texarkana Court of Appeals detailed the general principle that a party

cannot stand idly by when it learns of facts raising a fear of partiality:

> "In judicial proceedings, the requirements for preserving complaints and for the record are set out, respectively, in Rules 33 and 34 of the Texas Rules of Appellate Procedure. Although these rules are not written for appeals from arbitration awards, their principles should govern such appeals." *Nafta Traders . . .* , 339 S.W.3d [at] 101 n.80 . . . . Indeed, a party can waive an otherwise valid objection by proceeding with the arbitration despite knowledge of facts giving rise to such an objection. *Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 688 (Tex. App.—Dallas 2009, no pet.). As a result, "[a] party who knows or who has reason to know of an arbitrator's alleged bias but remains silent pending the outcome of the arbitration waives the right to complain." *Tex. Health Mgmt., LLC v. Healthspring Life & Health Ins. Co.*, No. 05-18-01036-CV, 2020 WL 3071729, at *4 (Tex. App.—Dallas June 10, 2020, no pet.) (mem. op.). When a party believes the arbitrator is biased, he "may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse." *Bossley v. Mariner Fin. Grp., Inc.*, 11 S.W.3d 349, 351–52 (Tex. App.—Houston [1st Dist.] 2000), *aff'd*, 79 S.W.3d 30 (Tex. 2002); *see Dealer Comput*[.] *Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012) (party seeking to vacate arbitration award based on evident partiality must object during arbitration; failure to do so results in waiver of right to object); *Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001) ("Even when a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel."); *Cook Indus., Inc. v. C. Itoh & Co. (Am.)*, 449 F.2d 106, 107–08 (2d Cir. 1971) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection.").

*Load Trail, LLC v. Julian*, 622 S.W.3d 472, 478 (Tex. App.—Texarkana 2021, no pet.);

*see also Sebastian*, 2019 WL 470087, at *4 ("Because [the arbitrator] disclosed . . .

relationships [that formed the basis of a partiality claim] during the arbitration and

31

[the party moving to vacate the award] failed to complain, [that party] has waived his complaint for appeal."); *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 684 (Tex. App.—Dallas 2011, pet. denied) ("Appellants did not raise an objection of evident partiality of [the] arbitrator . . . until after the arbitration award by the panel majority. A party who knows or has reason to know of an arbitrator's alleged bias but remains silent pending the outcome of the arbitration waives the right to complain."); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 804–06 (Tex. App.—Austin 2004, pets. denied) (op. on reh'g) ("Having elected to proceed with arbitration in the face of their knowledge of the arbitrator's losses in [the company that employed one of the claimant's] stock, appellees cannot now complain of the outcome.").

Of course, if the party does not have full knowledge of the facts that should have prompted the objection, there is no waiver. *Tenaska Energy*, 437 S.W.3d at 528 ("Here, [appellant] is challenging [the arbitrator's] partiality based on the information he failed to disclose. [Appellant] did not waive its evident partiality challenge by proceeding to arbitration based upon information it was unaware of at that time.").

Parkview tries to argue that it falls under the rule of *Tenaska* and rationalizes its failure to object by exaggerating what the arbitrator disclosed at the hearing:

> Parkview proceeded to the arbitration's final hearing unaware of disclosable facts bearing on this arbitrator's partiality. Here, in contrast to the situation in *Tenaska*, the [a]rbitrator had failed to make any disclosures about her personal experience in a real[-]estate[-]purchase transaction, let alone that her experience in that transaction formed an actual bias against developer sellers who did not deliver their projects to buyers when the buyers wanted or expected delivery. The [a]rbitrator

32

should have fully disclosed her past experience either when she was appointed as an arbitrator, or at the preliminary hearing she first conducted, when clearly[] she knew about the subject matter of this case, and her recollection of a disclosure need should have been triggered. Instead, the [a]rbitrator did not attempt any disclosure until the hearing was fully underway, which itself is cause of concern about her bad faith in not earlier disclosing a clearly disclosable situation, as is the fact that her mid-hearing disclosure was incomplete[] and neglected to mention that she harbored some partiality in favor of a buyer, who like her, put up a substantial deposit to reserve a condo in a project that was built or completed when it was expected to be, when the reservation deposit had been made.

Again, Parkview wants to gild the lily by arguing that the arbitrator was a disgruntled condominium buyer—a conclusion at odds with what she actually disclosed. And again, her disclosure was not prompted by her interest in purchasing a condominium but by hearing the name of a person with whom she had dealt and with whom Marshall had also dealt.

Further, we have noted that we disagree that the arbitrator even had the duty to disclose that she had an interest in purchasing a condominium. Thus, Parkview cannot claim that disclosure was lacking in the first place and logically cannot excuse the absence of a failure to object when confronted with trivial information. *Id.* ("If waiver cannot be predicated on undisclosed information, that information must nonetheless be more than trivial to satisfy the standard for evident partiality . . . .").

Finally, we are unpersuaded by Parkview's argument that it could take a wait-and-see approach once the arbitrator made her disclosure. Parkview argues that "[f]aced with a proverbial Hobson's choice[—]object to the [a]rbitrator's presiding

33

over the hearing at significant risk of offending the [a]rbitrator if the objection was not sustained, or proceed with the [a]rbitrator who might already be biased[—] Parkview chose not to object at that time." First, this argument mischaracterizes Parkview's actions; it did not "choose not to object" but affirmatively stated that it had no objection after foregoing the opportunity to ask the arbitrator more questions about her experience. Second, as the authority we cited notes, a party cannot ignore a disclosure that should have prompted an objection, lay behind the log, and then use the disclosure to attack an award. *See Load Trail, LLC*, 622 S.W.3d at 478. Fear of offending the arbitrator is not an excuse for not making an objection prompted by a disclosure. *See id.* at 479 ("Load Trail therefore decided that, rather than potentially offending the arbitrator by objecting to perceived actual bias, it would not object. That choice resulted in waiver of Load Trail's claims of actual bias that allegedly occurred during the arbitration proceeding.").

We overrule Parkview's second issue.

**D.  We reject Marshall's sole issue in his appeal because the trial court did not abuse its discretion by denying his claim for fees incurred in litigating his motion to confirm the Award and Parkview's motion to vacate.**

Marshall has filed his own appeal arguing in a single issue that the trial court erred by denying his claim for attorney's fees and costs associated with his motion to confirm the Award and Parkview's motion to vacate it. Here, the Award took the unusual approach of not deciding what fees to award should (1) a motion to confirm

34

or vacate be filed and (2) an appeal of a ruling on those motions be perfected. Instead, it placed the determination of what should be awarded for those contingencies in the discretion of the trial court. Marshall ignores that the trial court could have exercised its discretion to decide either that it was not within its purview to award additional fees or that the already awarded fees were adequate.

As noted, the arbitrator awarded Marshall more than $60,000 as reasonable attorney's fees for the efforts of his counsel to recover his earnest money deposit. With respect to fees associated with a motion to confirm or vacate and an appeal of orders resolving those motions, the arbitrator kicked that matter back to the trial court in the Award's following provision:

> Should this award be presented to a court for confirmation into a judgment or on a vacatur motion, the court may determine the amount of reasonable fees and costs for the confirmation/vacation process, any fee and cost amounts to be awarded in the event of an unsuccessful appeal by Respondent to a court of appeals, any fee and cost amounts to be awarded in the event Respondent files a petition for review with the Texas Supreme Court that is not granted, and any fee and cost amounts to be awarded in the event a petition for review is granted but the Texas Supreme Court finds Claimant successful in this matter.

Marshall filed a fee request for an additional $36,000 in fees related to the litigation in which he sought to confirm the Award and Parkview sought to vacate it. He also sought a conditional award of fees on appeal. The trial court rendered an order stating that it was "not awarding fees or costs of this hearing to Confirm/Vacate the Arbitration Award."

35

Attorney's fees are recoverable only when provided for by statute or by the parties' agreement. *Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992); *Jackson v. Biotectronics, Inc.*, 937 S.W.2d 38, 44 (Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh'g). We generally review a trial court's decision to award attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Simply, "[t]he fixing of a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion." *Spector Gadon & Rosen, P.C. v. Sw. Sec., Inc.*, 372 S.W.3d 244, 251 (Tex. App.—Dallas 2012, no pet.). With respect to the principles that we apply to determine whether an abuse of discretion has occurred, we note that

> [a] trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). We may not reverse for an abuse of discretion merely because we disagree with the trial court's decision; we must affirm so long as the decision is within the trial court's discretionary authority. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). The party claiming an abuse of discretion has the burden on appeal to show it. *City of Houston v. Woods*, 138 S.W.3d 574, 580 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

*Nigerian Found. v. Umezulike*, No. 01-20-00262-CV, 2022 WL 2923202, at *11 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.).

The principle that controls whether a party may recover fees associated with a motion to confirm an arbitration award is that "[i]f an arbitration award includes an award of attorneys' fees, a trial court may not award additional attorney fees for

enforcing or appealing the confirmation of the award, unless the arbitration agreement provides otherwise." *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied); *see also Bell v. Harrell*, 653 S.W.3d 14, 17 (Tex. App.—Amarillo 2022, pet. denied) (noting authority "generally holding that 'a trial court' may not award additional attorney's fees for enforcing or appealing the confirmation of the award if an arbitrator's decision already includes an award of attorney's fees").

Based on an opinion applying federal law, Marshall also tries to engraft a rule that if a party's challenge on an arbitration is without merit, fees should be awarded. The primary case that Marshall cites for this proposition is *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 283–84 (5th Cir. 1981). One of our sister courts examined a situation in which "[t]he parties' agreements did not provide for attorney's fees for enforcing the confirmation of the arbitration award," but the party seeking confirmation of the award argued fees could be awarded under the "without merit" principle invoked by Marshall. *See Acra v. Bonaudo*, No. 05-17-00451-CV, 2018 WL 3238133, at \*6 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.).

*Acra* rejected the argument that the "without merit" principle found in federal law altered the rule in Texas law that post-arbitration attorney's fees cannot be awarded absent a contract provision providing for that recovery:

> Appellees argue that the trial court may award attorney's fees when a party's challenge to an arbitration award is "without merit[]" and the party's refusal to abide by the award is "without justification." In

support of their argument, appellees cite *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848 (Tex. App.—Houston [1st Dist.] 2015, no pet.), in which the court stated, "When a party's challenge to an arbitration award is 'without merit' and its refusal to abide by the award is 'without justification,' a trial court can award attorneys' fees to the party seeking to confirm the arbitration award." *Id.* at 863–64. The court of appeals'[s] authority for this statement was a case from the Fifth Circuit Court of Appeals, *Executone Information Systems, Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994), which relied on an earlier opinion from the Fifth Circuit, *International Association of Machinists & Aerospace Workers, District 776 . . .* , 639 F.2d [at] 283–84 . . . . Appellees also argue that an award of attorney's fees for defending against a meritless motion to vacate an arbitration award is supported by the public policy favoring expedient, efficient, and cost-effective arbitration.

Regardless of how the federal courts may award attorney's fees or the strength of the public-policy arguments, Texas law does not allow recovery of attorney's fees unless authorized by statute or contract. *Wells Fargo Bank, N.A.*[ *v. Murphy*], 458 S.W.3d 912, 915 (Tex. 2015); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). None of the agreements between the parties or their affiliates provide for an award of attorney's fees for proceedings to confirm an arbitration award or for opposing a motion to vacate an arbitration award. Nor does any applicable statute provide for attorney's fees in this situation. Section 171.092 permits the trial court, in an order that confirms, modifies, or corrects an arbitration award, to award "costs of the application and of the proceedings subsequent to the application." [Tex.] Civ. Prac. [& Rem. Code Ann.] § 171.092(b). But that statute does not authorize the trial court to award attorney's fees.

*Id.* at *6–7 (footnote omitted). We agree that federal precedent does not apply and thus Marshall's effort to invoke that precedent fails because it relies on a rule inapposite of Texas law's limitation that post-arbitration fees cannot be recovered absent a contract provision providing for that recovery.

Here, though the arbitrator awarded fees, she then delegated the question to the trial court of what reasonable fee awards were warranted in dealing with the

38

confirmation or vacation of the Award and an appeal. Whether this was an appropriate delegation of her authority is open to question. *See Bell*, 653 S.W.3d at 20 n.2 ("The arbitrator effectively left the actual calculation of the fees to the trial court, and [appellant] failed to argue that such was impermissible. Thus, whether the trial court has the authority to calculate the amount of fees pursuant to an arbitrator's award of them is not before us.").

Marshall assumes that the arbitrator's delegation to the trial court was appropriate, and then argues that the Contract required an award of fees by citing the following provisions:

> Section 7.27 of the Contract states that the parties are to arbitrate any dispute arising out of or relating to the Contract. Section 3.7 states that "[Parkview] shall pay, upon final order of the court with appropriate jurisdiction stating that [Marshall] is entitled to [the Earnest Money Deposit], all costs and reasonable attorneys' fees incurred by [Marshall] in connection with its recovery thereof[.]" Furthermore, Section 7.14 states[,] "If it shall be necessary for either Purchaser or Seller to employee [sic] an attorney to enforce its rights pursuant to this Contract, the defaulting party shall reimburse the non[-]defaulting party for reasonable attorneys' fees and costs." [Record references omitted.]

Marshall assumes but does not explain how these provisions specifically provide for a recovery of confirmation fees and alter the general rule that a "trial court may not award additional attorney fees for enforcing or appealing the confirmation of the award." *See Crossmark, Inc.*, 124 S.W.3d at 436. The language in Section 3.7 that is the crux of Marshall's argument—that Parkview shall pay "all costs and reasonable attorneys' fees incurred by [Marshall] in connection with its recovery thereof"—does

not vest the trial court with the power to make a fee award above and beyond that made by the arbitrator. Nor does Section 7.14 empower the trial court to award fees associated with confirmation of an arbitrator's award or a challenge to it. *See Jones v. Carlos & Parnell, M.D., P.A.*, No. 05-17-00329-CV, 2017 WL 4930896, at *7 (Tex. App.—Dallas Oct. 31, 2017, pet. denied) (mem. op.) (reviewing clause that provided that "[i]n the event suit be instituted for breach or default of any of the conditions of this Agreement, the party prevailing in any such action, in law or equity shall be entitled to reasonable attorney's fees and court costs" and noting that clause did "not provide for a further award of attorney's fees for enforcing or appealing the confirmation of an arbitration award by the trial court"). Marshall's position also appears contradictory to his prior position that these very provisions placed the question of fees within the ambit of the arbitrator.

Here, the trial court's order denying Marshall's post-arbitration fee claim did not state a reason for that ruling. We see three rationales that would support the trial court's exercise of its discretion not to award fees for post-arbitration proceedings:

- Whatever the arbitrator's effort to pass the question of post-arbitration fees to the trial court, the trial court may have doubted its ability to make a decision vested in the arbitrator, and Marshall offers no argument that she could do so.

- The trial court could have doubted that the Contract provided for a recovery of fees for confirmation of the Award or for a fee award beyond that made by the arbitrator. The Contract provisions that Marshall cites do not address these questions nor place them in the ambit of the trial court. Further, Marshall's "without merit" argument based on federal precedent was not made to the trial court, and even if it had been, we hold that it is not a valid basis on which to award post-arbitration fees absent a contract provision authorizing that recovery.

- The trial court knew what fees the arbitrator had already awarded Marshall. The $60,000 award to Marshall was substantial. As a fee award, the arbitrator awarded one-third of the amount that Marshall had sought to recover for his earnest money deposit. Whether Marshall was legally entitled to a post-arbitration fee recovery, the trial court may have concluded that the amount of fees already awarded was sufficient. Marshall makes no argument that the trial court clearly abused its discretion by deciding that a reasonable fee was what the arbitrator had already awarded. He raises no argument that the trial court was wrong in that decision.

Thus, there were reasons why the trial court's decision not to award post-arbitration fees fell into the zone of reasonable disagreement, making it a decision within the trial court's discretion.

41

We overrule Marshall's sole issue in his appeal.

## IV. Conclusion

Having overruled Parkview's two issues and Marshall's single issue, we affirm the order granting Marshall's motion to confirm the arbitration award.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  February 22, 2024